THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JESSIE J. ORSBY, JR., Defendant-Appellant.

Second District    No. 2—95—1286

Opinion filed December 30, 1996.

Robert P. Will, Jr., of Will & Briscoe, of Waukegan, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Joan M. Kripke, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RATHJE delivered the opinion of the court:

Following a jury trial, the defendant, Jessie J. Orsby, Jr., was found guilty of the offenses of unlawful possession of a controlled substance, unlawful possession of a controlled substance with intent to deliver, and armed violence. The trial court imposed concurrent sentences of 20 years' imprisonment on the offense of unlawful possession of a controlled substance with intent to deliver and 10 years' imprisonment on the offense of armed violence. No conviction was entered and no sentence was imposed on the possession offense. The defendant appeals.

On appeal, the defendant raises the following issues: (1) whether the stop and search of his vehicle violated his rights under the fourth amendment; (2) whether the trial court's denial of his motion for production of the informant and an *in camera* inspection of certain police records pertaining to the defendant and the informant violated his rights under the sixth amendment; (3) whether the defendant was proved guilty of armed violence beyond a reasonable doubt; (4) whether the strip search of the defendant violated his rights under the fourth amendment and article 1 of the Illinois Constitution; (5) whether the defendant was denied the effective assistance of counsel; and (6) whether the defendant's sentence is excessive. The State also raises an issue as to whether the defendant was properly sentenced

for the offense of armed violence. We affirm the defendant's convictions but vacate his sentence and remand for a new sentencing hearing.

On January 18, 1995, Trent Robinson and Morris Wade, officers with the narcotics division of the North Chicago police department's anti-crime unit, were on duty, driving an unmarked police vehicle. It is not disputed that the defendant had been a target of an ongoing narcotics investigation being conducted by these officers. Officer Robinson had utilized a confidential informant to execute controlled narcotics buys from the defendant. One such buy had occurred earlier on January 18, 1995.

At approximately 7:15 p.m., Officers Robinson and Wade recognized the defendant driving a green Chevrolet automobile. The officers proceeded to follow the defendant's vehicle. After following the defendant for $2^1/2$ blocks, they observed the defendant's vehicle swerve and fail to signal for a turn and that the vehicle had only one headlight. The officers requested assistance from Officer Darcy Brown for the purposes of effecting a traffic stop. Officer Brown effected a traffic stop of the defendant's vehicle. As Officer Brown approached the driver's side of the vehicle, she observed the handle of a small caliber handgun located next to the defendant's right thigh. Officer Brown confiscated the weapon while Officer Robinson secured the defendant and placed him under arrest. At the scene, the defendant's vehicle was searched by a police dog trained in narcotics detection. The dog bit or scratched at an area near the steering column. The officers seized the gun and some ammunition but found no narcotics.

The defendant and the vehicle he was driving were transported to the North Chicago police department. A further search of the vehicle revealed cocaine in a plastic bag in an area behind the dashboard to the right of the steering column. A pat-down search of the defendant revealed cocaine. A further search of the defendant's clothing revealed packaged cocaine in the left side of the defendant's underwear.

According to the defendant, at the time of the stop, he told the officers that he was taking his handgun to the practice range for target shooting. He denied having possessed or sold narcotics. The defendant further testified that he had been harassed by Officer Robinson over a long period of time.

The defendant contends, first, that the stop of his vehicle and his subsequent arrest were a pretext to search his vehicle and his person and violated his rights against unreasonable search and seizure pursuant to the fourth amendment of the United States Constitution. The defendant argues that where the purpose of a traffic stop is a

pretext for a search or detention rather than a traffic violation, such a search or detention is improper. *People v. Mendoza*, 234 Ill. App. 3d 826, 837 (1992). He further argues that evidence discovered and seized by means of a search subsequent to a pretextual arrest is inadmissible, excluded in order to deter police misconduct and prevent law enforcement officers from being rewarded for their subterfuge. *People v. Alvarez*, 243 Ill. App. 3d 933, 937 (1993).

■ In *Whren v. United States*, 517 U.S. 806, 135 L. Ed. 2d 89, 116 S. Ct. 1769 (1996), the United States Supreme Court rejected the argument that traffic offenders may challenge probable cause stops generated by hidden reasons unrelated to enforcing the rules of the road. *Whren*, 517 U.S. at 818-19, 135 L. Ed. 2d at 101, 116 S. Ct. at 1777. Ulterior motives do not invalidate police conduct that is justified on the basis of probable cause to believe that a violation of the law has occurred. *Whren*, 517 U.S. at 813, 135 L. Ed. 2d at 98, 116 S. Ct. at 1774; *People v. Thompson*, 283 Ill. App. 3d 796, 798 (1996). The constitutional reasonableness of a traffic stop does not depend on the actual motivations of the police officers involved. *Whren*, 517 U.S. at 813, 135 L. Ed. 2d at 98, 116 S. Ct. at 1774; *Thompson*, 283 Ill. App. 3d at 798.

■ In the case before us, Officers Robinson and Wade observed that defendant's vehicle swerved, failed to signal for a turn, and had only one headlight. Minor violations to be sure but violations sufficient to give the officers probable cause to believe that traffic laws of this state were being violated. See *Thompson*, 283 Ill. App. 3d at 798.

A similar situation occurred in *Thompson*. In that case, the police effected a stop of the Thompsons' van for a defective rear brake light. As the reviewing court acknowledged, the stop was not motivated by a desire to enforce the rules of the road but rather by an anonymous tip that the van contained alcohol and drugs. On the basis of the decision in *Whren*, the *Thompson* court held as follows:

> "Even though the traffic offense masked other reasons for the stop unsupported by probable cause, ulterior motives cannot make otherwise lawful conduct illegal. The pretextual nature of the stop did not invalidate it. The police had probable cause for the stop. The inquiry ends there." *Thompson*, 283 Ill. App. 3d at 798-99.

The defendant responds that this case differs from *Whren* in that in *Whren* the officers stopped the vehicle in which Whren was a passenger for a traffic violation and then discovered the presence of contraband in plain view. Thus, in *Whren*, the sole motivation for the stop was the traffic violation, whereas in the present case the officers' motivation in stopping the defendant's vehicle was the information

they had received regarding the defendant's drug-related activities. However, the reasonableness of the traffic stop does not depend on the actual motivations of the individual officers involved. *Whren*, 517 U.S. 806, 135 L. Ed 2d 89, 116 S. Ct. 1769.

Since Officers Robinson and Wade had probable cause to effect a traffic stop of the defendant's vehicle, the defendant's rights under the fourth amendment were not violated.

■ Next, the defendant contends that the trial court erred in denying his motion for production of the informant and for an *in camera* inspection of the police records of the investigation of the defendant and prior transactions involving the confidential informant. The defendant argues that the denial of the production request impaired his ability to present a defense. Specifically, the defendant argues that production of the confidential informant would have given the defendant an opportunity to impeach the officers' testimony that there was an independent basis for stopping and searching the defendant's vehicle, as well as showing the extreme bias and prejudice of the officers against the defendant. The defendant also argues that such information would have enabled him to rebut testimony as to previous controlled drug buys involving him.

It is well settled that strong public policy reasons favoring the nondisclosure of an informant must be balanced against a defendant's need for the disclosure in order to prepare his defense or where the disclosure is essential for a fair determination of a cause. *People v. McBee*, 228 Ill. App. 3d 769, 773 (1992). However, if the issue is one of probable cause, and guilt or innocence is not at stake, the nondisclosure of an informer's identity is not error. *McBee*, 228 Ill. App. 3d at 773. Whatever the circumstances, the defendant must show a need for the disclosure. *McBee*, 228 Ill. App. 3d at 773.

We have previously held that, so long as the officers had probable cause to effect a stop of the defendant's vehicle, an ulterior motive on their parts does not affect the validity of the stop of the vehicle. *Whren*, 517 U.S. at 813, 135 L. Ed. 2d at 98, 116 S. Ct at 1774; *Thompson*, 283 Ill. App. 3d at 798-99. Thus, there would be no basis for any impeachment of the officers on that point. Moreover, the jury was made aware that the officers might have been biased or prejudiced against the defendant based upon the officers' own testimony that there was an ongoing investigation of possible drug dealing by the defendant. It was also clear that the officers were seeking an opportunity to search the defendant and his vehicle.

Finally, the defendant does not offer any explanation as to how production of the police records or the confidential informant would allow him to rebut the testimony about the prior drug transactions

involving the defendant. Even if the police records or the confidential informant would somehow cast doubt on the previous drug transactions involving the defendant, they in no way affect the validity of the stop, which was based upon probable cause, regardless of additional motives in the minds of the officers.

As the defendant has failed to show a need for the disclosure of the informant or the police records of any investigation of the defendant, the trial court did not err in denying the defendant's motion for production of the police records and the confidential informant.

■ Next, the defendant contends that he was not proved guilty of armed violence beyond a reasonable doubt.

"A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." 720 ILCS 5/33A—2 (West 1994). "A person is considered armed with a dangerous weapon *** when he or she carries on or about his or her person or is otherwise armed with a Category I, Category II, or Category III weapon." 720 ILCS 5/33A—1(a) (West 1994). A handgun, such as the one seized from the defendant's vehicle, is a "Category I weapon." 720 ILCS 5/33A—1(b) (West 1994).

The defendant argues that he could not be found guilty of armed violence beyond a reasonable doubt because the weapon was unloaded and there was no evidence that he attempted to access or use the weapon.

The armed violence statute was enacted in 1967 as a response to the growing incidence of violent crime. *People v. Condon*, 148 Ill. 2d 96, 109 (1992); *People v. Alejos*, 97 Ill. 2d 502, 507-08 (1983). The intended purpose of the armed violence statute is to deter felons from using dangerous weapons so as to avoid the deadly consequences that might result if the felony victim resists. *Condon*, 148 Ill. 2d at 109. For the purpose of the statute to be served, it is necessary that the defendant have some immediate access to or timely control over the weapon. *Condon*, 148 Ill. 2d at 110. Thus, where the defendant was found in the kitchen where there were no guns, the fact that guns were located in other parts of the house did not support a conviction of armed violence since the defendant did not have immediate access to the guns. See *Condon*, 148 Ill. 2d at 110.

In this case, Officer Brown observed the handgun located next to the defendant's thigh. Thus, the defendant here had immediate access to the weapon. However, defendant suggests that an *unloaded* weapon does not grant the immediate access or timely control envisioned by the legislature when enacting the armed violence statute. This precise question has never previously been addressed. However, prior cases provide a basis for resolving this issue.

We observe, first, that the statute makes no requirement that, for a handgun to qualify as a dangerous weapon, it must be loaded. See 720 ILCS 5/33A—1 (West 1994). However, the defendant argues that the mere physical presence of a weapon is not within the meaning of the armed violence statute. See *People v. Bond*, 178 Ill. App. 3d 1020, 1023 (1989). The vast majority of cases interpreting this statute involve either loaded weapons or a combination of loaded and unloaded weapons. See *Condon*, 148 Ill. 2d 96; *Alejos*, 97 Ill. 2d 502; *People v. Hernandez*, 229 Ill. App. 3d 546 (1992); *Bond*, 178 Ill. App. 3d 1020.

Although not directly on point, *People v. King*, 155 Ill. App. 3d 363 (1987), does provide some guidance. In that case, the police were admitted by King to her apartment for purposes of executing a search warrant. Upon entering a bedroom, the police discovered contraband and a gun on a coffee table three feet from the bed. The gun was unloaded, and no ammunition was found. King was convicted of armed violence based upon the presence of the weapon. On appeal, King argued that a jury instruction that stated that the mere presence of the pistol was sufficient to find that she was armed with a dangerous weapon misstated the law and should not have been given. *King*, 155 Ill. App. 3d at 368.

The reviewing court reversed King's conviction and ordered a new trial. The court agreed with King that the legislature did not intend that a defendant be convicted of armed violence simply because a weapon was located anywhere in the home. The court further explained as follows:

> "Presence of the weapon, for purposes of the armed violence statute, denotes not only physical existence of the weapon, but characterizes the relationship between the weapon and the person. Although the statute does not require the use or even the threatened use of the weapon, it does require that the person carry the weapon on or about his person or be otherwise armed. This requirement emphasizes the quality of the relationship between the person and the weapon or the potential hazard which exists when a person is armed while committing a felony. The mere physical existence of the weapon without knowledge or control, including immediate access to the weapon, is not within the meaning of the armed violence statute." *King*, 155 Ill. App. 3d at 369.

We note that the decision in *King* did not turn on whether or not the weapon was loaded.

As we have previously observed, the legislature could have but did not require that a weapon, such as a handgun, be loaded in order

to qualify as a dangerous weapon. It is not our function to declare that the legislature did not mean what the plain language of the statute imports. *People v. Haron*, 85 Ill. 2d 261, 268 (1981). In the present case, the handgun was located next to the defendant's thigh, giving him immediate access and control over the weapon. In addition, Officer Brown testified that the handgun recovered from the defendant was a Raven 25-caliber and that in the defendant's coat pocket was a clip with six 25-caliber rounds in it. Thus, the defendant had immediate access to an unloaded weapon and immediate access as well to ammunition capable of discharge from the weapon in question. Together, these two facts establish that the defendant had immediate access to a weapon as contemplated by the legislature in enacting the armed violence statute. Therefore, we conclude that the defendant was found guilty of armed violence beyond a reasonable doubt.

Next, the defendant contends that he was subjected to a strip search that was not performed according to Illinois law and, therefore, his rights were violated under the both the United States and Illinois Constitutions.

■ The State argues that the defendant failed to raise this argument in his post-trial motion, and, therefore, the argument is waived. However, the motion for a new trial does raise an issue as to police procedures followed in the "strip search" of the defendant at the police station. Further, during the hearing on the post-trial motions, defense counsel advised the trial court that the defendant wished to argue *pro se* the appropriateness of or unlawfulness of the strip search in this case. We therefore will not consider the issue waived.

■ Illinois law defines a "strip search" in part as "having an arrested person remove or arrange some or all of his or her clothing so as to permit a visual inspection of the *** undergarments of such person." 725 ILCS 5/103—1(d) (West 1994). The statute further prescribes the proper procedure to be followed when a strip search is performed as follows:

"(f) Every peace officer or employee of a police department conducting a strip search shall:

(1) Obtain the written permission of the police commander or an agent thereof designated for the purposes of authorizing a strip search in accordance with this Section.

(2) Prepare a report of the strip search. This report shall include the written authorization required by paragraph (1) of this subsection (f), the name of the person subjected to the search, the names of the persons conducting the search, and the time, date and place of the search. A copy of the report shall be provided to the person subject to the search." 725 5/103—1(f)(1), (f)(2) (West 1994).

■ Strip searches are not *per se* illegal or unconstitutional. See *People v. Seymour*, 84 Ill. 2d 24, 39-40 (1981); *United States v. Klein*, 522 F.2d 296, 300-01 (1st Cir. 1975). The defendant alleges only that the strip search in this case was not performed according to the above-stated statutory provisions. While we do agree that the defendant here was subjected to a strip search, we agree with the State that the defendant has failed to establish in what way the strip search of the defendant failed to comply with Illinois law. At the hearing for the defendant's post-trial motion, defense counsel enumerated several violations indicating that the record reflected these violations. In his brief, the defendant cites to several places in the record in support of these alleged violations. However, a review of these cited portions of the record does not support the defendant's argument that the strip search in this case was improperly conducted.

We, therefore, conclude that the defendant has waived any issue as to the validity of the strip search since he has failed to specify how the statute was violated in this case. See 155 Ill. 2d R. 341(e).

■ Next, the defendant contends that he was denied the effective assistance of counsel. The defendant argues that defense counsel was ineffective in that he failed to challenge the constitutionality and the conformity to Illinois law of the strip search performed on the defendant.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness, measured by reference to prevailing professional norms, and that the substandard representation so prejudiced the defendant as to deny him a fair trial. *People v. Palmer*, 162 Ill. 2d 465, 475 (1994). A defendant's failure to make the requisite showing of either deficient performance or sufficient prejudice defeats an ineffectiveness claim. *Palmer*, 162 Ill. 2d 465. The effective assistance of counsel refers to competent, not perfect, representation, and there is a strong presumption that counsel's performance fell within a wide range of reasonable professional assistance. *Palmer*, 162 Ill. 2d at 476.

" '[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *** If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' " *People v. Albanese*, 104 Ill. 2d 504, 527 (1984), quoting *Strickland v. Washington*, 466 U.S. 668, 697, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2069-70 (1984).

To demonstrate prejudice, a defendant must show a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *People v. Owens*, 129 Ill. 2d 303, 309 (1989); *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

Even had defense counsel challenged the strip search of the defendant and successfully moved to suppress the evidence of the cocaine found as a result of that search, the result here would not have been different. Apart from the cocaine found during the strip search of the defendant, the police seized 1.61 grams of a substance containing cocaine from the defendant during an unchallenged pat-down search at the police station and 25.38 grams of a substance containing cocaine from the defendant's vehicle. Even without the substance containing cocaine seized from the defendant during the strip search, there was still sufficient evidence of the presence of cocaine to support the defendant's convictions.

Thus, the defendant has failed to establish that "but for trial counsel's errors," the result reached by the jury in this cause would have been different. We conclude therefore that the defendant was not denied the effective assistance of counsel.

■ Finally, the defendant contends that his concurrent sentences of 20 years' imprisonment for the offense of unlawful possession of a controlled substance with intent to deliver and 10 years' imprisonment for the offense of armed violence are excessive. The defendant argues that, in imposing the above sentences, the trial court focused only on the deterrent factor and never considered the defendant's rehabilitative potential. The defendant points to his age, 22 years, his relatively minor previous criminal history, the success he achieved as a high school athlete, his pursuit of higher education, and his good relationship with his family, all of which he argues were ignored by the trial court. We disagree.

In imposing the sentences in this case, the trial court noted that the defendant's prior record of criminal offenses was relatively minor compared with the instant offenses. It further noted that the defendant had stated that he had no drug or alcohol abuse problem that might have accounted for the defendant's commission of these crimes. The trial court then stated as follows:

> "It is surprising on the plus side for the defendant he should have everything going for him in the world in terms of being a good student and an excellent athlete, continuing on and finding his way through college. I've considered the age of the defendant, his support system at home, considered that in determining his likelihood for committing these offenses in the future and his likelihood for rehabilitation in the future. Certainly whatever sentence the Court impose [*sic*] must be a significant sentence. ***

This is not a standard story of someone who's down and out and has nothing going for him or her. You are an intelligent, astute person before the court. And I've considered that in terms of the likelihood to learn from what in fact will be a severe lesson for him to serve. To impose a sentence at the minimum range, given the background and the prior police contacts, would not be appropriate to merely impose a 15-year sentence. At the same time I don't believe that the upper range argued by the State is appropriate or necessary in this case."

Thereupon, the trial court imposed the sentences indicated above.

A trial court's sentencing decisions are entitled to great deference and weight. *People v. Streit*, 142 Ill. 2d 13, 18-19 (1991). A trial judge is in a far better position than an appellate court to fashion an appropriate sentence because such judge can make a reasoned judgment based upon firsthand consideration of such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. *Streit*, 142 Ill. 2d at 19.

The discretion of a trial court in making sentencing decisions is not totally unbridled. The standard of review is whether a trial court has abused its discretion in imposing a sentence; if it has, the sentence may be altered upon review. *Streit*, 142 Ill. 2d at 19; 134 Ill. 2d R. 615(b)(4). When reviewing courts examine the propriety of sentences imposed by trial courts, they should proceed with great caution and care. *Streit*, 142 Ill. 2d at 19. A reviewing court must not substitute its judgment for that of a sentencing court because it would have weighed the factors differently. 142 Ill. 2d at 19.

The remarks of the trial court in this case indicated that, contrary to the defendant's argument, it did contemplate the defendant's rehabilitation potential in fashioning the sentences in this case. Therefore, we will not disturb those sentences on that basis.

However, we observe that, during the sentencing hearing in this case, both the parties and the trial court referred to a minimum sentence of 15 years' imprisonment. However, it is not entirely clear from the record to which offense the parties believed the minimum 15-year sentence applied. Further, the State now argues that the trial court erred in imposing a 10-year sentence for the offense of armed violence since a conviction of armed violence while possessing a Category I weapon, in this case a handgun, carries a minimum sentence of 15 years' imprisonment. 720 ILCS 5/33A—3(a) (West 1994).

We agree with the State that the defendant was improperly sentenced for the offense of armed violence. The State requests that we correct the sentencing order to reflect a sentence of 15 years'

imprisonment on the charge of armed violence. See *People v. Arna,* 168 Ill. 2d 107, 113 (1995) (a sentence that does not conform to a statutory requirement is void, and the appellate court has the authority to correct it at any time); see also *People v. Richmond,* 278 Ill. App. 3d 1042, 1048 (1996).

We decline merely to correct the sentencing order in this case because it appears that the trial court may have been under the impression that the minimum sentence of imprisonment for possession of not less than 15 nor more than 100 grams of a substance containing cocaine with intent to deliver was 15 years. The State acknowledges in its brief that that offense carries a sentencing range of between 6 and 30 years' imprisonment. 720 ILCS 570/401(a)(2)(A) (West 1994). While the State argues that the 20-year sentence imposed was within the sentencing range, we are not convinced that the 20-year sentence imposed was not the result of the trial court's misapprehension that the minimum for that offense was 15 years' imprisonment.

Clearly the trial court intended to impose a sentence of more than the minimum. But, assuming it believed that the minimum was 15 years' imprisonment, the 20-year sentence it imposed was much closer to what it may have believed was the minimum sentence than it would be to the actual minimum of 6 years' imprisonment. Although it is not quite clear from the record which offense the parties and the trial court were referring to as having a minimum sentence of 15 years, it seems unlikely that the trial court was referring to the armed violence offense as it then imposed, albeit erroneously, a 10-year sentence of imprisonment for that offense.

We therefore affirm the defendant's convictions of armed violence and possession of a controlled substance with intent to deliver. However, we vacate the sentences imposed in this case and remand for a new sentencing hearing. At this sentencing hearing, it would be helpful for all concerned if the appropriate statutory sentencing ranges, including any applicable enhancement or extended-term provisions, would be set forth for each offense for which the defendant is to be sentenced.

The defendant's convictions are affirmed; his sentences are vacated and the cause remanded for a new sentencing hearing in accordance with this court's instructions.

Affirmed in part and vacated in part; cause remanded.

McLAREN, P.J., and GEIGER, J., concur.