NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190741-U

NO. 4-19-0741

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 8, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Macoupin County |
| RYAN D. BECK, | ) | No. 18CF159 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Joshua Aaron Meyer, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Presiding Justice Knecht and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1  *Held:* (1) The State presented sufficient evidence for a rational trier of fact to find defendant guilty of armed violence and unlawful possession of a weapon by a felon.

(2) The record does not support defendant's claim his trial counsel was ineffective for not filing a motion to suppress evidence found during an inventory search of the truck.

¶ 2  On August 14, 2019, after a bench trial, the trial court found defendant guilty of unlawful possession of a weapon by a felon, unlawful possession of methamphetamine, and armed violence. Defendant appeals, arguing his convictions for armed violence and unlawful possession of a weapon by a felon should be reversed because he did not have immediate access or timely control of the handgun at issue. He also argued he did not exhibit any propensity to violence at the time of his arrest. Defendant also argues his trial counsel was ineffective because the attorney did not file a motion to suppress certain evidence. We affirm.

¶ 3                                I. BACKGROUND

¶ 4            On June 13, 2018, the State charged defendant by information with unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2018)) and unlawful possession of methamphetamine (less than five grams) (720 ILCS 646/60(b)(1) (West 2018)). On October 30, 2018, the State also charged defendant with armed violence (720 ILCS 5/33A-2(a) (West 2018)).

¶ 5            Defendant's bench trial was held on August 14, 2019. Jennifer Walden-Pond, a nurse in the emergency room at the hospital in Carlinville, testified she called the police on June 11, 2018, after learning from another employee a vehicle was parked in the hospital parking lot but not by the emergency room, which was the only part of the hospital open at the time. She asked the police if they would check on the welfare of anyone who might be in the vehicle.

¶ 6            Jack Wofford testified he was working as a police officer for the Carlinville Police Department and was dispatched to the hospital to check on the vehicle. Officer Phillip Warren also responded to the hospital and first located the vehicle in the parking lot. According to Wofford, while Warren was speaking to defendant, who was sitting inside the truck, Wofford ran the license plate on the vehicle in question, a Chevrolet pickup truck. The license came back as registered to a different vehicle.

¶ 7            Wofford approached the truck and spoke with defendant, whom he recognized. Wofford asked defendant what he was doing in the parking lot and about the vehicle registration. Defendant said he had only had the truck a few days, was having problems getting the truck titled in his name, and put license plates from another vehicle he owned on this truck. Defendant produced the title to the truck. His name was not on the title. According to defendant, he had either purchased or was in the process of buying the truck. The officers had defendant exit the

vehicle. Defendant denied the officers' request to search the vehicle. The officers then took defendant into custody for the registration and title violation.

¶ 8 Because of the title violation, registration violation, and being unable to determine who owned the truck, the police called to have the truck towed. Prior to the truck being towed, following standard procedure, the officers conducted an inventory search of the vehicle. The vehicle had two doors, a bench seat, and a middle console/arm rest which could be folded down from the back rest. The officers found a blue and black vial, containing a white crystal substance Wofford suspected was methamphetamine, and a torch style lighter under the driver's seat. Behind the passenger seat, the officers found a .22-caliber handgun, ammunition for the gun, and a prescription bottle for Mary Beck, defendant's ex-wife. The handgun and ammunition were within reach of someone sitting in the driver's seat with the console/armrest folded down. Wofford testified the handgun was small enough to be concealed on a person. Behind the driver's seat, the officers found a homemade smoking device made from a Captain Morgan bottle. The police also recovered a backpack from the passenger seat of the vehicle, which contained defendant's business cards, smoking devices, components used to make smoking devices, and more .22-caliber ammunition.

¶ 9 Wofford testified he interviewed defendant at the police station. Defendant denied knowing anything about the handgun found in the truck. He did admit he knew about the ammunition in the vehicle. Wofford testified the handgun and ammunition were right next to each other in the truck. Defendant initially denied knowing about any drugs or smoking devices in the vehicle. He admitted the backpack was his but denied the contraband found inside the bag was his.

¶ 10 The day after defendant's initial interview, defendant said he wanted to provide

more information to the police. He then admitted the smoking devices and drug paraphernalia were his, but he denied using the devices to ingest drugs. However, he believed others had used the devices to smoke drugs. Defendant told Wofford he liked to ride his bicycle at the hospital on a regular basis.

¶ 11　　　　On cross-examination, Wofford testified he did not remember if the dispatcher provided either a description of the truck or information whether anyone was in the vehicle. Wofford noted the handgun he found in the truck was not loaded. Further, neither the gun nor bullets were tested for fingerprints.

¶ 12　　　　On redirect examination, Wofford stated he believed the console/armrest was down in the truck during the encounter with defendant and defendant could have seen the handgun behind the passenger seat. Even if the console/armrest had been up, Wofford testified it could have been lowered within seconds, enabling defendant's access to the gun.

¶ 13　　　　Phillip Warren testified he was a police officer with the Carlinville Police Department and also responded to the hospital at approximately 11 p.m. When Warren located a Chevy S-10 truck in the parking lot, he approached the vehicle and made contact with defendant, who was in the driver's seat and alone. Warren knew defendant through prior law enforcement contacts.

¶ 14　　　　Warren testified packs of Propel were also found when the truck was searched. He testified Propel or other water additives are sometimes used by individuals smoking methamphetamine from a water-based pipe. Warren also stated he and Wofford found a torch lighter and a small container of a white powdery substance under the driver's seat of the truck and a firearm behind the passenger seat. Like Wofford, Warren testified the truck had a bench seat with a center console/armrest, which could be folded down in a matter of seconds. From

defendant's position in the driver's seat, the handgun behind the passenger seat was within reach.

¶ 15        Defendant stipulated the Illinois State Police laboratory report dated July 16, 2018, indicated the white substance found in the truck tested positive for 0.5 grams of methamphetamine. The trial court also accepted evidence of defendant's prior felony conviction.

¶ 16        At the close of the State's case, defendant moved for a directed verdict on the armed violence charge because the handgun was not loaded. The trial court denied the motion.

¶ 17        Defendant testified on his own behalf. According to defendant, in the summer of 2018, he was not doing well financially. He had established a construction business but did not have a reliable mode of transportation. In June 2018, he was in the process of buying a 1992 Chevrolet S-10 truck—the truck at issue here—through an individual named Jeremy Striplin, who was acting as a middleman between defendant and the truck's owner. The agreed upon price for the truck was $800. Defendant had paid $400 at that point, and a time had not been set for him to pay the remaining $400. The truck was not always drivable, and defendant parked it at different people's homes overnight, leaving the key inside the truck and the truck unlocked. On occasion, other individuals would use the truck, leave the truck at various places, and defendant would have to find it. He did not thoroughly look through the truck each time he drove it. When he parked the truck at different homes, he often left personal belongings in the vehicle, including his tools, a toolbox, and his backpack. Prior to his arrest, his backpack had been unattended in the truck continuously for a few days.

¶ 18        On the night in question, defendant stated he walked from his parents' house to get his truck. An individual named Ethan Lee told defendant the truck had been left at the hospital. Defendant stated he had last seen the truck earlier that afternoon and did not know who left it at the hospital. It was dark when he found the truck in the hospital parking lot. He did not notice the

gun or methamphetamine inside the vehicle. Defendant denied being in the truck when the officers arrived and had only found the truck shortly before the police officers arrived. Because defendant was having issues getting license plates for the truck due to title issues, he affixed license plates from one of his other vehicles on the truck.

¶ 19     On cross-examination, defendant testified someone must have left the .22-caliber handgun in the truck. He also denied putting the .22-caliber bullets in his backpack. Although he had placed license plates on the truck, he claimed the truck was not his yet and other people were also in possession of the truck. He denied the vial found under the driver's seat was his even though he admitted an identical vial found in the backpack belonged to him. According to defendant, he was never within arm's reach of the drugs or the handgun that evening because he was not inside the truck. On redirect examination, defendant testified he believed he did not own the truck on the night in question because he had not paid for the truck in full. He did not feel like he could tell other people not to drive the truck, which is why he left the key in the truck when he parked it.

¶ 20     The State then called Officer Wofford as a rebuttal witness. Wofford testified defendant never told him he went to the hospital because someone had left the truck there.

¶ 21     The trial court issued a written decision, finding defendant guilty of unlawful possession of a weapon by a felon, unlawful possession of methamphetamine, and armed violence. The court found Jennifer Walden-Pond, Officer Jack Wofford, and Officer Phillip Warren to be credible witnesses. The court did not find defendant's explanation as to the events of June 11, 2018, credible.

¶ 22     On September 30, 2019, the trial court sentenced defendant to concurrent prison terms of 17 years for armed violence and 10 years for unlawful possession of a weapon by a felon

with credit for 477 days served. Defendant's conviction for unlawful possession of methamphetamine merged with his conviction for armed violence.

¶ 23　　　　This appeal followed.

¶ 24　　　　　　　　　　II. ANALYSIS

¶ 25　　　　　　　　A. Sufficiency of Evidence to Convict

¶ 26　　　　Defendant first argues his convictions for armed violence and unlawful possession of a weapon by a felon should be reversed because the State did not present sufficient evidence to prove his guilt beyond a reasonable doubt. Defendant argues the State's evidence did not show he (1) knew the gun was in the truck at the time of his arrest, (2) had actual or constructive possession of the gun, or (3) had a propensity to violence.

¶ 27　　　　Section 24-1.1(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.1(a) (West 2018)) states in part, "It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." Defendant denied the gun found in the truck was his. He also denied knowing the gun was in the truck. As to how the gun came to be in the truck, defendant offered an explanation the trial court did not believe.

¶ 28　　　　According to defendant, he did not believe he would own the truck until he paid for it in full. As a result, he did not think he could tell other people they could not also use the vehicle and leave it at different places. Defendant claimed he did not drive the truck to the hospital parking lot on the night in question or park it there earlier in the day. Defendant said he had walked to the hospital to retrieve the truck and his encounter with the police began before he got in the truck. However, the State presented evidence defendant was inside the truck when the police arrived and

the weapon was visible to someone sitting in the driver's seat.

¶ 29        We will affirm a challenge to a conviction based on the sufficiency of the evidence if any rational trier of fact could have found the State proved a defendant's guilt beyond a reasonable doubt considering all the evidence in the light most favorable to the prosecution. *People v. Brown*, 2013 IL 114196, ¶ 48, 1 N.E.3d 888. "[A] reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses." *Brown*, 2013 IL 114196, ¶ 48. While the credibility determinations of a trier of fact are not conclusive, they are entitled to deference. *Brown*, 2013 IL 114196, ¶ 48. Based on the record in this case, we accept the trial court's determination defendant's testimony was not credible. Further, the evidence, when viewed in the light most favorable to the prosecution, allowed a rational trier of fact to find defendant guilty of unlawfully possessing the handgun via constructive possession.

¶ 30        "To establish constructive possession, the State must prove beyond a reasonable doubt that defendant (1) knew the handgun was present and (2) exercised immediate and exclusive control over the area where the handgun was found." *People v. Anderson*, 2018 IL App (4th) 160037, ¶ 32, 102 N.E.3d 260. Possession and knowledge are questions to be resolved by the trier of fact. Those findings should not be disturbed by a reviewing court unless the evidence is so improbable, unbelievable, or palpably contrary to the verdict that it creates a reasonable doubt of a defendant's guilt. *Anderson*, 2018 IL App (4th) 160037, ¶ 32.

¶ 31        Quoting *People v. Nesbit*, 398 Ill. App. 3d 200, 209, 924 N.E.2d 517, 526 (2010), defendant argues "the State cannot rely on an inference of knowledge from defendant's presence in a motor vehicle where a weapon is found. The State must present other evidence establishing defendant's knowledge of the weapon." We note "[k]nowledge may be inferred from several

factors, including: (1) the visibility of the weapon from defendant's location in the vehicle, (2) the amount of time in which defendant had an opportunity to observe the weapon, (3) gestures or movements made by defendant that would suggest an effort to retrieve or conceal the weapon, and (4) the size of the weapon." (Internal quotation marks omitted.) *Nesbit*, 398 Ill. App. 3d at 209, 924 N.E.2d at 525-26.

¶ 32        *Nesbit* is distinguishable from the situation here. In *Nesbit*, the defendant's mother testified she owned the vehicle the defendant was driving when he was stopped, she owned and placed the gun found in the vehicle under the driver's seat, and defendant did not know the gun was in the car. *Nesbit*, 398 Ill. App. 3d at 211, 924 N.E.2d at 526. In this case, the trial court did not find defendant's testimony explaining the presence of the weapon in the vehicle to be credible. Further, the officers testified the gun would have been visible to someone sitting in the driver's seat of the vehicle. Finally, defendant had ammunition in his backpack for the handgun.

¶ 33        The State also presented evidence defendant was treating the truck as if he owned it. Defendant placed license plates from another vehicle he owned on the truck and was attempting to have the title to the truck transferred into his name. Further, he had exclusive control of the truck when the police arrived at the parking lot. As for defendant's testimony someone who used the truck must have left the gun behind the passenger seat, we again note the trial court did not find defendant's testimony credible.

¶ 34        Turning to defendant's conviction for armed violence, section 33A-2(a)(1) of the Criminal Code of 2012 (Code) (720 ILCS 5/33A-2(a) (West 2018)) states: "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law, except [certain excluded offenses]." Section 33A-1(c)(1) of the Code (720 ILCS 5/33A-1(c)(1) (West 2018)) states "[a] person is considered armed with a dangerous weapon for

purposes of this Article, when he or she carries on or about his or her person or is otherwise armed with a Category I, Category II, or Category III weapon." A handgun is a Category I weapon. 720 ILCS 5/33A-1(c)(2) (West 2018). Our supreme court has interpreted the meaning of "otherwise armed" as follows:

> "A felon with a weapon at his or her disposal is forced to make a spontaneous and often instantaneous decision to kill without time to reflect on the use of such deadly force. [Citation.] Without a weapon at hand, the felon is not faced with such a deadly decision. Hence, we have the deterrent purpose of the armed violence statute. Thus, for this purpose to be served, it would be necessary that the defendant have some type of *immediate access to* or *timely control over* the weapon." (Emphases in original.) *People v. Condon*, 148 Ill. 2d 96, 109-10, 592 N.E.2d 951, 958 (1992).

As already noted, the State established defendant's knowledge and constructive possession of the handgun in his truck. The evidence was also sufficient to establish beyond a reasonable doubt the handgun was immediately accessible to defendant while sitting in the driver's seat of the vehicle.

¶ 35        Defendant does cite *People v. Smith*, 191 Ill. 2d 408, 732 N.E.2d 513 (2000), for the proposition his conviction for armed violence should be reversed because he did not exhibit a propensity for violence. However, his reliance on *Smith* is misplaced. In *Smith*, the supreme court held the defendant in that case did not commit armed violence because he did not have immediate access to or timely control over a weapon when the police entered his home because he dropped his gun out of a window when he became aware the police were approaching. *Smith*, 191 Ill. 2d at 412, 732 N.E.2d at 515. The supreme court also found the defendant did not have the capability and intent to maintain control and possession of the gun. *Smith*, 191 Ill. 2d at 412, 732 N.E.2d at

515. According to the supreme court:

> "Permitting an armed violence conviction to stand against a felon such as defendant, who exhibited no propensity to violence and dropped the unloaded gun out of the window as the police approached his apartment to search for drugs, would not serve, but rather would frustrate, the statute's purpose of deterring criminals from involving themselves and others in potentially deadly situations." *Smith*, 191 Ill. 2d at 413, 732 N.E.2d at 515.

In the case before us, defendant unlawfully possessed methamphetamine while armed with a handgun. The weapon was behind the passenger seat of the truck and was immediately accessible to defendant. As a result, a rational trier of fact could have found defendant guilty of armed violence.

¶ 36    In defendant's reply brief, he focuses on the fact the handgun was unloaded. Defendant argues this is a significant factor which the State did not address in its brief. However, in his initial brief, defendant did not argue this fact precluded his conviction. According to Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018), points not argued in an appellant's brief "shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Regardless of defendant's forfeiture, we note the Second District in *People v. Orsby*, 286 Ill. App. 3d 142, 149, 675 N.E.2d 237, 241-42 (1996), held a gun does not have to be loaded to support an armed violence conviction.

¶ 37    B. Ineffective Assistance of Counsel

¶ 38    Defendant next argues he received ineffective assistance of counsel in the trial court because his attorney did not file a motion to suppress evidence found in the truck as a result of the warrantless inventory search of the vehicle. Ordinarily, to establish ineffective assistance of

counsel, a defendant must show his counsel's performance was objectively unreasonable and defendant was prejudiced by the attorney's unreasonable performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When a defendant argues his counsel was ineffective for failing to file a motion to suppress, the defendant must show the motion was meritorious and "a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Henderson*, 2013 IL 114040, ¶¶ 12, 15, 989 N.E.2d 192.

¶ 39 Defendant argues a motion to suppress evidence found in the truck would have been successful because the police inventory search was not lawful. According to our supreme court, for a warrantless inventory search to be lawful, (1) the impoundment of the vehicle must be lawful, (2) the inventory search must be performed in good faith pursuant to reasonable standardized police procedures, and (3) the search must be performed for the purpose of protecting the vehicle owner's property, protecting the police from claims of stolen or lost property, or to protect the police and public from danger. *People v. Hundley*, 156 Ill. 2d 135, 138, 619 N.E.2d 744, 745 (1993).

¶ 40 Defendant argues the impoundment of his vehicle was not proper because the vehicle was parked in the hospital parking lot, the lot was not closed or gated off, and the State presented no evidence signs were posted in the lot stating vehicles could not be parked there while the building was not open. The officers did not testify the vehicle was illegally parked. Defendant points out the police asked defendant for consent to search the vehicle. After he refused to give consent, the police arrested defendant and called for the vehicle to be towed due to the title violation, registration violation, and questions regarding the ownership of the vehicle. Because the police were having the vehicle towed, they performed an inventory search and discovered the gun and drugs. According to defendant, the State presented no evidence the car presented a danger

to the public or the officers were trying to protect defendant's property if the vehicle was left in the parking lot.

¶ 41        Based on the evidence here, we do not find a motion to suppress would have been granted. Had a motion been made, the State likely would have provided more evidence why the officers chose to have the vehicle impounded. Moreover, even with the limited information presented by the State regarding the officers' reason for towing the vehicle, the fact the license plates were not registered to the vehicle and the title was not in defendant's name supports the officers' decision to tow the vehicle until it could be determined whether the truck had been stolen or defendant had permission to have possession of the vehicle. As a result, defendant cannot establish his trial counsel was ineffective for not filing a motion to suppress evidence found during the inventory search.

¶ 42                                III. CONCLUSION

¶ 43        For the reasons stated, we affirm defendant's convictions.

¶ 44        Affirmed.