THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. RONNIE ROSS, Defendant-Appellant.

First District (6th Division)   No. 1—96—1534

Opinion filed May 2, 1997.—Rehearing denied July 22, 1997.

Rita A. Fry, Public Defender, of Chicago (Andrea Monsees, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Latisha Foster, Assistant State's Attorneys, of counsel), for the People.

JUSTICE ZWICK delivered the opinion of the court:

Defendant, Ronnie Ross, was charged with unlawful use of a weapon after officers, following a routine traffic stop, discovered a gun in the back seat of his automobile. Defendant's motion to quash arrest and suppress evidence and motion to suppress physical evidence were denied during the course of a consolidated bench trial. The sole issue presented is whether a police officer may ask a stopped motorist whether he has a gun in his vehicle after the motorist presents the officer with a firearm identification card. Because defendant is willing to concede the State's version of the relevant facts on appeal, we apply *de novo* review. *People v. Dilworth*, 169 Ill. 2d 195, 201, 661 N.E.2d 310 (1996); *People v. Anaya*, 279 Ill. App. 3d 940, 944-45, 665 N.E.2d 525 (1996).

Officer Robert McHale and his partner were patrolling near 119th and Halsted in Chicago at approximately 6 p.m. on August 9, 1995. They were in uniform and in a marked squad car. Officer McHale testified he observed the defendant's vehicle proceed through a red light at the intersection. The officers activated their police lights and curbed the defendant at 802 West 118th Street. They stopped within 15 feet of the back of defendant's car.

McHale testified that, as he approached from the passenger side, defendant hurriedly came out of the vehicle and met the officers near the back of his car. McHale's partner asked if defendant had a driver's license and proof of insurance. Defendant could produce neither, but did offer to the police a recent traffic ticket. When McHale's partner asked defendant for further identification, defendant produced a firearm owner identification (FOID) card with his photograph on it.

McHale testified that, after seeing defendant's FOID card, his partner asked defendant if there was a gun in the car. Defendant said yes. After asking defendant's passenger to step out of the vehicle, McHale searched the car and found a leather-like pouch containing an unloaded .25-caliber Lorcin pistol in the back seat. A clip containing four bullets was also in the pouch.

McHale brought the gun to defendant, who confirmed he owned it. McHale then placed defendant under arrest, impounded his vehicle and ticketed defendant for failing to stop at a red light, failing to have proof of insurance, failing to register his vehicle, and disobedience to the traffic code.

The State argues that the gun found by Officer McHale, as well as defendant's statements about it, were properly admitted into evidence even though McHale did not have a warrant to search defendant's vehicle. Defendant does not contest the State's claim that McHale had probable cause to search the car after defendant told him about the gun,[1] but argues his statement to McHale was obtained in violation of his fourth amendment rights. According to defendant,

---

[1] In a supplemental memorandum of law submitted after oral argument, defendant notes, for the first time, that merely transporting a gun in a car in Chicago is not necessarily a criminal offense because such a gun could be "broken down in a non-functioning state" or "not immediately accessible." See 720 ILCS 5/24—2(b)(4) (West 1994). Defendant argues that the officers at the time of the search had no knowledge concerning the condition of the gun or its location in the car and, therefore, they did not have probable cause to search. Because this argument was not made in defendant's brief or reply brief, however, let alone in the trial court, it is waived. *People v. Turner*, 249 Ill. App. 3d 474, 481-82, 619 N.E.2d 781 (1993); *People v. Wych*, 248 Ill. App. 3d 818, 825, 617 N.E.2d 1285 (1993).

the gun in the vehicle was wholly unrelated to the traffic offense for which he had been stopped, thus warranting suppression of all of the fruits of the unlawful questioning.

■ In *People v. Murray*, 137 Ill. 2d 382, 387-88, 560 N.E.2d 309 (1990), the Illinois Supreme court recognized three theoretical tiers of lawful police-citizen encounters. The first tier involves the arrest of an individual supported by probable cause to arrest, without which the fourth amendment prohibition against unreasonable seizures is violated. *Henry v. United States*, 361 U.S. 98, 4 L. Ed. 2d 134, 80 S. Ct. 168 (1959). The next tier involves the so-called "*Terry* stop," a brief seizure that must be supported by a reasonable suspicion of criminal activity in order to be within the bounds of the fourth amendment. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The last tier does not involve police officers in their role as crime fighters but, rather, as community caretakers. This last tier involves no coercion or detention by the police when they approach a citizen to gather information, such as when the police investigate vehicle accidents in which there is no claim of criminal liability. *Cady v. Dombrowski*, 413 U.S. 433, 441, 37 L. Ed. 2d 706, 714-15, 93 S. Ct. 2523, 2528 (1973).

■ Situations involving traffic stops are most closely associated with the middle, "*Terry* stop," police function. *Berkemer v. McCarthy*, 468 U.S. 420, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (1984); *People v. Penny*, 188 Ill. App. 3d 499, 544 N.E.2d 1015 (1989). This is because the citizen has already been observed violating the law and is not free to disregard the officer's directions to stop. On the other hand, the contact between police officer and offender does not rise to the level of a full-blown arrest, in which nearly all of the individual's free will is overborne by the State.

As we have noted, simply because a *Terry* stop falls short of an arrest does not mean that a *Terry* stop fails to implicate a citizen's fourth amendment rights. On review of the propriety of a *Terry* stop, we make a two-prong inquiry. First, we consider whether the officer's actions in stopping the defendant were justified at their inception. Second, we consider whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the interference in the first place. *Terry*, 392 U.S. at 20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879.

In this case, the defendant concedes that the initial stop of his vehicle was proper. He admits running a red light and has no quarrel with the officers' decision to pull him over, request to see his license

and proof of insurance, and their issuing to him a ticket. Defendant argues, however, that the officers' subsequent action in questioning him about whether he had a gun in the car was not reasonably related to the circumstances which justified the stop. Defendant relies principally upon *People v. Sinclair*, 281 Ill. App. 3d 131, 666 N.E.2d 1221 (1996).

In *Sinclair*, officers stopped a vehicle that was travelling 55 miles per hour in a 45-mile-per-hour zone. Officers issued a warning, but then requested the driver of the vehicle to step out and consent to the search of the car. Initially, the 16-year-old driver refused the search, stating that his lawyer had advised him not to consent. *Sinclair*, 281 Ill. App. 3d at 133. Undeterred, officers persisted, eventually convincing the young man to allow a search. Subsequently, one of the passengers in the vehicle, Sinclair, was found to possess marijuana.

In resolving the issue of whether the search of Sinclair was lawful, the court focused on the driver's tentative consent, concluding the officers had exceeded their authority under *Terry* by pressuring him to agree to the search. The court set forth the rule that once a driver states unambiguously that he will not consent to a search, the police must release the driver, car and passengers in the absence of probable cause to search or an "articulable suspicion sufficient to prolong the investigatory stop." *Sinclair*, 281 Ill. App. 3d at 138. Because officers did not release the vehicle after the driver first declined the officers' request to search, the court determined that any contraband found thereafter was necessarily "tainted by the illegality." *Sinclair*, 281 Ill. App. 3d at 137.

The State makes three arguments in response to the defense's claims. First, it distinguishes the facts of *Sinclair* by noting that, in this case, the defendant's production of a FOID card created the type of articulable suspicion *Sinclair* itself recognized would justify an extended *Terry* stop and questioning about whether there might be a gun in defendant's vehicle. See *Sinclair*, 281 Ill. App. 3d at 138. Second, the State asserts that officers involved in a *Terry* stop must be free to make reasonable inquiries regarding the existence of weapons in a stopped motorist's vehicle due to the extreme dangers such weapons present to their safety and the minimal intrusion such questioning presents to the defendant's rights. Lastly, the State argues that the facts of this case establish that any information the officers received regarding the gun was the product of defendant's decision, freely made, to discuss the question with the officers. Thus, the State claims, no fourth amendment rights are at issue at all in this case.

■ We need not address the State's second and third arguments,

as we agree with the State's initial claim. Defendant asserts that the FOID card he gave to officers merely indicated "compliance with the law" and that any inquiry regarding the card exceeded the routine nature of the traffic stop. Defendant's argument, however, fails to recognize that even more basic information was conveyed to the officers by the FOID card, namely, that defendant owned a gun. We find *Sinclair* to be distinguishable because we agree with the State that the defendant's production of a FOID card created an independent basis upon which to continue and expand the officers' initial *Terry* stop. Once the officers were presented with an indication that the individual with whom they were dealing owned a firearm, it was only reasonable for them to be concerned about the whereabouts of that gun and to question him regarding it. This is particularly so here, where a passenger sat inside the car at the time of the police questioning of the defendant. That passenger had easy access to whatever firearm might be inside the vehicle.

The fourth amendment protects citizens only from "unreasonable" searches and seizures. Although decided under a fifth amendment analysis, we think opinions such as *People v. Dunlap*, 82 Mich. App. 171, 266 N.W.2d 637 (1978), and *Commonwealth v. Kitchings*, 40 Mass. App. Ct. 591, 666 N.E.2d 511 (1996), are helpful in considering the reasonableness of the officers' conduct. In *Dunlap*, an officer observed an automobile passenger with a gunshot wound after the officer pulled the driver over for speeding. The court concluded that the officer's questioning regarding the whereabouts of the gun was proper in light of his observation of the wound. *Dunlap*, 82 Mich. App. at 174-75, 266 N.W.2d at 639. In *Kitchings*, the officer observed an ammunition clip inside the defendant's vehicle. The court found that the sight of the ammunition clip created in the officer an understandable concern for his safety. The court concluded that the officer's excited statement to the defendants, "Where is the fucking gun?" was therefore reasonable. *Kitchings*, 40 Mass. App. Ct. at 598, 666 N.E.2d at 516-17.

In sum, we hold simply that when police officers reasonably suspect the presence of a gun at a traffic stop, as they did in this case, they may ask those at the scene regarding its whereabouts without violating the fourth amendment. We leave for another day the question of whether officers may ask about such weapons in all traffic stops as a matter of routine. *Cf. People v. Edwards*, 158 Mich. App. 561, 405 N.W.2d 200 (1987).

Affirmed.

GREIMAN, P.J., and THEIS, J., concur.