Docket No. 92305–Agenda 8–May 2002.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHN A. GONZALEZ, Appellee.

Opinion filed April 17, 2003.

JUSTICE FITZGERALD delivered the opinion of the court:

The issue we consider is whether, during the course of a routine traffic stop, a police officer’s mere request for identification from a passenger runs afoul of the federal and state constitutional prohibitions against unreasonable seizures. See U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6. We hold that such a request passes constitutional muster.

BACKGROUND

The salient facts in this case are not in dispute. On December 9, 1998, Officers McCarthy and Lee of the Naperville police department were on routine patrol. Both officers were in plain clothes in an unmarked vehicle. At approximately 4 p.m., while patrolling Route 59, they stopped a vehicle, in which defendant was the passenger, for not having a front license plate. Lee approached the car on the driver’s side; McCarthy approached the car on the passenger’s side. McCarthy, who observed no criminal conduct by defendant either before or immediately after the stop, asked him for identification. Defendant complied, producing a traffic ticket, in lieu of other identification. Thereafter, McCarthy ran a criminal history of defendant. The ensuing encounter between McCarthy and defendant resulted in a search of defendant’s person, revealing a packet of cocaine. Defendant was subsequently arrested and charged with unlawful possession of a controlled substance (less than 15 grams of a substance containing cocaine). See 720 ILCS 570/402(c) (West 1998).

Defendant filed a motion to quash arrest and suppress evidence, arguing that his arrest constituted an unreasonable seizure under the fourth amendment to the United States Constitution and article I, section 6, of the Illinois Constitution. See U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6. Defendant maintained that Officer McCarthy had no lawful basis to ask him for identification, thus tainting the subsequent search. The trial court agreed, concluding that, absent any suspicion of criminal conduct by defendant, Officer McCarthy’s request for identification was unreasonable. The trial court, therefore, granted defendant’s motion to quash arrest and suppress evidence. The State appealed.

The appellate court, with one justice dissenting, affirmed the trial court’s judgment. 324 Ill. App. 3d 15. We allowed the State’s petition for leave to appeal (see 177 Ill. 2d R. 315) and now reverse the judgment of the appellate court.

ANALYSIS

I

Preliminarily, we note that defendant has not filed an appellee’s brief in this case. Nonetheless, we will decide the merits of the appeal under the principles set forth in 
First Capitol Mortgage Corp. v. Talandis Construction Corp.
, 63 Ill. 2d 128, 133 (1976) (“if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee’s brief, the court of review should decide the merits of the appeal”).

Before proceeding to the merits, we consider the appropriate standard of review. When a trial court’s ruling on a motion to suppress involves factual determinations or credibility assessments, the court’s ruling will not be disturbed on review unless it is manifestly erroneous. 
People v. Anthony
, 198 Ill. 2d 194, 200-01 (2001); 
People v. Sorenson
, 196 Ill. 2d 425, 430-31 (2001); see also 
People v. Gherna
, 203 Ill. 2d 165, 175 (2003). Where, however, the facts are not in dispute, the ultimate question posed by the legal challenge to the trial court’s ruling is reviewed 
de novo
. 
Gherna
, 203 Ill. 2d at 175; 
Anthony
, 198 Ill. 2d at 201. As already indicated, the facts relevant to this appeal are not in dispute. We, therefore, review 
de novo
 the State’s legal challenge to the suppression order.

II

At the outset, we reject the State’s contention that the fourth amendment is not implicated in this case because Officer McCarthy’s request for identification qualified as “community caretaking.”

“Community caretaking” is a label used to describe consensual police-citizen encounters that typically involve the safety of the public. 
People v. Murray
, 137 Ill. 2d 382, 387 (1990); see also 324 Ill. App. 3d at 22 (collecting cases). This type of encounter involves no coercion or detention and thus requires no legal justification. 
Murray
, 137 Ill. 2d at 387. The State fails to explain in what way the request for identification from defendant served a public-safety function, and we glean no facts from the record which would warrant using the community-caretaking label in this case. Accordingly, we turn to an examination of the fourth amendment in the context of this traffic stop.

III

The fourth amendment to the United States Constitution guarantees the “right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.” U.S. Const., amend. IV; see 
Elkins v. United States
, 364 U.S. 206, 213, 4 L. Ed. 2d 1669, 1675, 80 S. Ct. 1437, 1442 (1960) (fourth amendment prohibition is applicable to state officials through the fourteenth amendment). Similarly, article I, section 6, of our state constitution guarantees that the “people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, [and] seizures.” Ill. Const. 1970, art. I, §6. We have construed the search and seizure language found in section 6 in a manner consistent with the Supreme Court’s fourth amendment jurisprudence. 
Fink v. Ryan
, 174 Ill. 2d 302, 314 (1996).

The fourth amendment’s imposition of a reasonableness standard is intended to safeguard the privacy and security of individuals against arbitrary invasions by government officials, including law enforcement agents. 
Delaware v. Prouse
, 440 U.S. 648, 653-54, 59 L. Ed. 2d 660, 667, 99 S. Ct. 1391, 1396 (1979). A particular law enforcement practice is thus judged by “balancing its intrusion on the individual’s Fourth Amendment interests against its promotion of legitimate governmental interests.” 
Prouse
, 440 U.S. at 654, 59 L. Ed. 2d at 667-68, 99 S. Ct. at 1396; see also 
Illinois v. McArthur
, 531 U.S. 326, 331, 148 L. Ed. 2d 838, 848, 121 S. Ct. 946, 950 (2001) (“we balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable”).

The Supreme Court has characterized the temporary detention of “individuals” during a vehicle stop by police, even if only for a brief period and for a limited purpose, as a “seizure” of “persons” within the meaning of the fourth amendment. 
Whren v. United States
, 517 U.S. 806, 809-10, 135 L. Ed. 2d 89, 95, 116 S. Ct. 1769, 1772 (1996), citing 
Prouse
, 440 U.S. at 653, 59 L. Ed. 2d at 667, 99 S. Ct. at 1396; 
United States v. Martinez-Fuerte
, 428 U.S. 543, 556, 49 L. Ed. 2d 1116, 1127, 96 S. Ct. 3074, 3082 (1976); 
United States v. Brignoni-Ponce
, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 614, 95 S. Ct. 2574, 2578 (1975). Although the Court has not expressly held that a “passenger,” as distinguished from the “driver,” is seized at the moment the vehicle is stopped, the Court has recognized that, as a practical matter, any passengers are stopped by virtue of the stop of the vehicle. 
Maryland v. Wilson
, 519 U.S. 408, 413-14, 137 L. Ed. 2d 41, 47, 117 S. Ct. 882, 886 (1997); see also 
Berkemer v. McCarty
, 468 U.S. 420, 436, 82 L. Ed. 2d 317, 332, 104 S. Ct. 3138, 3148 (1984) (acknowledging that a traffic stop “significantly curtails the ‘freedom of action’ of the driver and the passengers, if any, of the detained vehicle”). The Court has also referred to the driver and any passengers collectively as the “occupants” of the vehicle, holding that all are seized. See, 
e.g.
, 
United States v. Hensley
, 469 U.S. 221, 226, 83 L. Ed. 2d 604, 610, 105 S. Ct. 675, 679 (1985) (“stopping a car and detaining its occupants constitute a seizure within the meaning of the Fourth Amendment”); 
Prouse
, 440 U.S. at 653, 59 L. Ed. 2d at 667, 99 S. Ct. at 1396 (“stopping an automobile and detaining its occupants constitute a ‘seizure’ within the meaning of [the fourth and fourteenth] Amendments”); see also 
United States v. Kimball
, 25 F.3d 1, 5 (1st Cir. 1994) (“When a police officer effects an investigatory stop of a vehicle, 
all
 occupants of that vehicle are subjected to a seizure, as defined by the Fourth Amendment” (emphasis in original)); 
United States v. Roberson
, 6 F.3d 1088, 1091 (5th Cir. 1993) (“a stop results in the seizure of the passenger and driver alike”). Accordingly, we conclude that defendant here, as a passenger/occupant in the vehicle stopped by police, was “seized” within the meaning of the fourth amendment.

Because a vehicle stop constitutes a seizure of the vehicle’s occupants, a vehicle stop is subject to the fourth amendment’s requirement of reasonableness. 
Whren
, 517 U.S. at 809-10, 135 L. Ed. 2d at 95, 116 S. Ct. at 1772. In determining the reasonableness of a traffic stop, courts are guided by the Supreme Court’s observation that the usual traffic stop is more analogous to a 
Terry
 investigative stop (see 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)) than to a formal arrest. 
Berkemer
, 468 U.S. at 439, 82 L. Ed. 2d at 334, 104 S. Ct. at 3150. Therefore, as a general rule, a fourth amendment challenge to the reasonableness of a traffic stop is analyzed under 
Terry 
principles. See 
United States v. Sharpe
, 470 U.S. 675, 682, 84 L. Ed. 2d 605, 613, 105 S. Ct. 1568, 1573 (1985); 
People v. Brownlee
, 186 Ill. 2d 501, 518-21 (1999); see also 
People v. White
, 331 Ill. App. 3d 22, 27 (2002); 
People v. Robinson
, 322 Ill. App. 3d 169, 175 (2001); 
People v. Ross
, 289 Ill. App. 3d 1013, 1016 (1997); 
United States v. Valadez
, 267 F.3d 395, 397-98 (5th Cir. 2001); 
United States v. Walden
, 146 F.3d 487, 490 (7th Cir. 1998); 
United States v. Jones
, 269 F.3d 919, 924 (8th Cir. 2001); 
United States v. Botero-Ospina
, 71 F.3d 783, 786 (10th Cir. 1995); 
United States v. Purcell
, 236 F.3d 1274, 1277 (11th Cir. 2001); 
Wilson v. Indiana
, 745 N.E.2d 789, 791-92 (Ind. 2001); 
State v. Dickey
, 152 N.J. 468, 476, 706 A.2d 180, 184 (1998); 
McGaughey v. Oklahoma
, 37 P.3d 130, 136 (Okla. 2001); 
Freeman v. Texas
, 62 S.W.3d 883, 886 (Tex. Ct. App. 2001). Under 
Terry
, a law enforcement officer may, within the strictures of the fourth amendment, conduct a brief, investigative stop of individuals, absent probable cause to arrest, provided the officer has a reasonable, articulable suspicion of criminal activity. 
Terry
, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880.
(footnote: 1)
 We observe that traffic stops are frequently supported by “probable cause” to believe that a traffic violation has occurred, rather than the less exacting 
Terry
 standard of a “reasonable, articulable suspicion.” See 
People v. Orsby
, 286 Ill. App. 3d 142, 146-47 (1996) (officers’ observation of minor traffic law violations provided probable cause to effect a traffic stop); 
People v. Shepherd
, 242 Ill. App. 3d 24, 29 (1993) (same); 
United States v. Barahona
, 990 F.2d 412, 416 (8th Cir. 1993) (observing that it is well established that a traffic violation–however minor–creates probable cause for a vehicle stop). In the present case, for example, the officers observed that the vehicle in which defendant was a passenger was missing the front license plate, a clear violation of our vehicle code. See 625 ILCS 5/3–413 (West 1998) (governing display of vehicle registration plates); 625 ILCS 5/3–701 (West 1998) (prohibiting operation of vehicle without proper evidence of registration); 625 ILCS 5/3–833 (West 1998) (making it unlawful for any person to own or operate a vehicle on the public highways of this state without complying with the Illinois Vehicle Code). Thus, the officers’ stop of the vehicle was supported by probable cause.

Courts, however, generally do not distinguish between those cases in which the traffic stop is based on 
Terry
’s “articulable suspicion” and those cases in which the traffic stop is supported by probable cause. That is, 
Terry
 principles apply even in the presence of probable cause. See 
United States v. Wellman
, 185 F.3d 651, 655-56 (6th Cir. 1999); 
United States v. Williams
, 271 F.3d 1262, 1267 (10th Cir. 2001); 
United States v. Morris
, 910 F. Supp. 1428, 1440 (N.D. Iowa 1995); 
Mitchell v. United States
, 746 A.2d 877, 887 (D.C. 2000); 
Dickey
, 152 N.J. at 476, 706 A.2d at 184; see also 
United States v. Shabazz
, 993 F.2d 431, 434-35 (5th Cir. 1993). Accordingly, the reasonableness of the vehicle stop in the present case is subject to a 
Terry
 analysis, irrespective of the fact that the stop was supported by probable cause.
(footnote: 2)
 A 
Terry
 analysis includes a dual inquiry. We must consider (1) “whether the officer’s action was justified at its inception,” and (2) “whether it was reasonably related in scope to the circumstances which justified the interference in the first place.” 
Terry
, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879. With respect to the first inquiry, as already noted, the vehicle stop in this case was supported by probable cause and was thus “justified at its inception.” With respect to the second inquiry, on which defendant’s challenge was based, we must consider whether the officer’s request for identification from defendant was reasonably related in scope to the circumstances which justified the stop in the first place.

There is a divergence of opinion among the federal and state courts as to the parameters of the 
Terry
 “scope” requirement when determining the propriety of police questioning during a traffic stop. See generally T. Fusco, Annotation, 
Permissibility Under Fourth Amendment of Detention of Motorist by Police, Following Lawful Stop for Traffic Offense, to Investigate Matters Not Related to Offense
, 118 A.L.R. Fed. 567 (1994). A comparison of 
United States v. Shabazz
, 993 F.2d 431 (5th Cir. 1993), and 
United States v. Holt
, 264 F.3d 1215 (10th Cir. 2001), best illustrates this point.

In 
Shabazz
, police officers stopped a vehicle driven by defendant, Mateen Shabazz, for speeding. Codefendant Keith Parker was a passenger in the vehicle and represented himself as the owner of the car. While running a computer check of Shabazz’s license, the officers separately questioned the defendants about their recent whereabouts. Based on their conflicting stories, and the officers’ belief that Parker seemed nervous, the officers requested consent from Parker to search the vehicle. Parker agreed. At the time of Parker’s consent, the officers were awaiting the results of the computer check on Shabazz’s license. A search of the car revealed over 400 grams of crack and powder cocaine. The defendants were arrested and subsequently convicted on drug possession charges. Prior to trial, the defendants moved to suppress the evidence found in the vehicle as the fruits of a fourth amendment violation. The defendants argued that the officers’ questions exceeded the reasonable scope of the stop’s original purpose, 
i.e.
, the officers’ questions regarding their recent whereabouts were wholly unrelated to the initial justification for the stop–speeding. Thus, the defendants claimed the officers’ conduct violated the second prong of the 
Terry
 analysis. The federal district court denied the suppression motion; the court of appeals affirmed. 
Shabazz
, 993 F.2d 431.

Relying on the proposition that “mere police questioning does not constitute a seizure” (
Florida v. Bostick
, 501 U.S. 429, 434, 115 L. Ed. 2d 389, 398, 111 S. Ct. 2382, 2386 (1991)), the court of appeals rejected any notion that a police officer’s questioning, even on a subject unrelated to the purpose of the traffic stop, is itself a fourth amendment violation. 
Shabazz
, 993 F.2d at 436. The court determined that “detention, not questioning, is the evil at which 
Terry
’s second prong is aimed.” 
Shabazz
, 993 F.2d at 436. Because the questioning of Shabazz and Parker took place while the officers were legitimately waiting for the results of the computer check of Shabazz’s license, the questioning did nothing to extend the duration of the initial, valid seizure. Accordingly, the detention–to the point of Parker’s consent–continued to be supported by the facts that justified its initiation. 
Shabazz
, 993 F.2d at 437. The court of appeals concluded that while defendants “were under no obligation to answer the questions, the Constitution does not forbid law enforcement officers from asking.” 
Shabazz
, 993 F.2d at 437. See also 
United States v. Childs
, 277 F.3d 947 (7th Cir. 2002) (where police stopped vehicle for cracked windshield and observed seatbelt violation by passenger, officer’s question to passenger as to whether he was carrying marijuana did not turn reasonable detention into unreasonable detention where the question was asked while the driver was being processed and passenger could have protected himself by declining to answer); 
State v. Amaya
, 176 Or. App. 35, 29 P.3d 1177 (2001) (where police stopped vehicle for burned-out license plate light and illegal turn, questioning regarding contents of passenger’s bag did not violate the fourth amendment where it did not have the effect of further detaining the passenger);
 State v. Parkinson
, 135 Idaho 357, 17 P.3d 301 (App. 2000) (where police stopped vehicle for cracked windshield, brief and general questioning of driver about the presence of drugs and open containers of alcohol did not impermissibly extend the scope of the stop).

In contrast to the 
Shabazz
 opinion, which considered only the permissible 
duration
 of the detention, the federal court of appeals in 
Holt
 held that the reasonableness of a traffic stop “must be judged by examining both the length of the detention 
and the manner in which it is carried out
.” (Emphasis added.) 
Holt
, 264 F.3d at 1230. In that case, the defendant, Dennis Holt, was stopped at a driver’s license checkpoint. The officer observed a seatbelt violation and instructed Holt to exit his vehicle and join the officer in his patrol car. During the course of writing a warning for the seatbelt violation, the officer asked Holt if there was anything in Holt’s vehicle, such as loaded weapons, of which the officer should be aware. Holt stated that there was a loaded pistol behind the passenger seat. Additional questioning revealed that Holt had previously used drugs. The officer requested and obtained Holt’s consent to search the vehicle. At that point, the officer had not yet issued the warning to Holt for the seatbelt violation and still had Holt’s driver’s license in his possession. The search revealed a loaded pistol, drug paraphernalia, and a white powder later identified as methamphetamine. Prior to trial on drug and firearm possession charges, Holt moved to suppress the evidence seized from his vehicle. The federal district court granted the motion, and a divided panel of the court of appeals affirmed the suppression order. 
United States v. Holt
, 229 F.3d 931 (10th Cir. 2000). On rehearing 
en banc
, the court of appeals reversed. 
Holt
, 264 F.3d 1215.

The court of appeals ultimately held that “the government’s interest in officer safety outweighs a motorist’s interest in not being asked about the presence of loaded weapons.” 
Holt
, 264 F.3d at 1226. The court noted that nothing, however, compels a motorist to answer. 
Holt
, 264 F.3d at 1224. Significantly, the court of appeals rejected the government’s position that “as long as the officer’s interrogation does not unreasonably extend the length of the stop, the Fourth Amendment is not implicated.” 
Holt
, 264 F.3d at 1228. The court also expressly rejected the holding in 
Shabazz
 and concluded that 
Terry
 contemplates a limitation both on the 
length
 of a detention and the 
breadth
 or manner of the detention. 
Holt
, 264 F.3d at 1229-30. See also 
United States v. Pruitt
, 174 F.3d 1215 (11th Cir. 1999) (where police stopped vehicle for speeding, additional irrelevant questions put to driver prior to completion of traffic ticket constituted a violation of 
Terry
).

Our appellate court also has not been uniform in its approach when determining the permissible scope of police questioning during a traffic stop. In some cases, the court has applied the 
Terry
 framework in a manner similar to the approach adopted in 
Holt
. See 
White
, 331 Ill. App. 3d at 35 (“police are not entitled to go on fishing expeditions to satisfy their curiosity or their hunches while waiting for the results of the computer check” of the driver’s license); 
People v. Branch
, 295 Ill. App. 3d 110, 114 (1998) (police officer’s request for identification from backseat passenger of lawfully stopped vehicle was unreasonable absent any suspicion of criminal activity). In other cases, the appellate court has been more aligned with the approach adopted in 
Shabazz
, concluding that the fourth amendment is not implicated where an officer approaches a person and asks questions, including requests for identification, provided compliance is not required. See 
People v. Smith
, 266 Ill. App. 3d 362, 366-67 (1994) (officer’s request for identification from passenger in lawfully stopped vehicle was not a coercive demand and thus did not constitute even a minimal seizure); 
People v. Harris
, 325 Ill. App. 3d 262, 265-66 (2001) (following 
Smith
 and holding that passenger’s compliance with officer’s request for identification was not voluntary), 
appeal allowed
, 198 Ill. 2d 600 (2002).

We conclude that neither approach strikes the proper balance between the government’s interest in effective law enforcement and the individual’s interest in being free from arbitrary governmental intrusions, which lies at the core of the concept of “reasonableness.” See 
Prouse
, 440 U.S. at 654, 59 L. Ed. 2d at 667-68, 99 S. Ct. at 1396.

First and foremost, we disagree with 
Shabazz
 and similar cases which have concluded that length is the only constraint under 
Terry
’s scope inquiry, and that an officer may therefore ask 
any
 questions during the course of a routine traffic stop so long as such questions do not prolong the detention. Allowing police to pose any question to the occupants of a stopped vehicle, even if such question is totally divorced from the purpose of the stop, effectively does away with any balancing of the competing interests involved. Such an approach is also inconsistent with our reading of Supreme Court precedent, indicating that there is a limitation on the 
manner
 in which a detention is carried out, in addition to a 
temporal
 limitation. In this regard the Court has stated:

“The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer’s suspicion in a short period of time.” 
Florida v. Royer
, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1325-26 (1983) (plurality op.).

See also 
Hensley
, 469 U.S. at 235, 83 L. Ed. 2d at 616, 105 S. Ct. at 683 (where the Court held that the “length and intrusiveness” of a particular vehicle stop and detention were justified).

Second, we do not believe that unfettered police questioning of drivers and passengers can be justified by relying on the principle that “ ‘mere police questioning does not constitute a seizure.’ ” 
Shabazz
, 993 F.2d at 436, quoting 
Bostick
, 501 U.S. at 434, 115 L. Ed. 2d at 398, 111 S. Ct. at 2386. Where there is an articulable suspicion or probable cause to support a vehicle stop, our concern is 
not
 whether police questioning constitutes a seizure–all of the occupants of the vehicle are already seized at the moment of the stop. See 
Whren
, 517 U.S. at 809-10, 135 L. Ed. 2d at 95, 116 S. Ct. at 1772. Rather, our concern is whether the detention, lawful at its inception, became an unreasonable seizure based upon subsequent police conduct.

Additionally, we cannot agree with the approach, employed in 
Holt
 and similar cases, which suggests that any inquiry police may put to a driver or passenger in a stopped vehicle must be directly tied to the purpose of the stop in order to satisfy 
Terry
’s scope requirement. In our view, such a restrictive approach would prevent police from posing even the most benign questions to occupants of the vehicle, thus effectively giving no weight to the government’s side of the balance and stripping any notion of common sense out of the “reasonableness” equation. Although our legal system is steeped with rules, standards, and formulas, logic and common sense should be no less a part of it.

As the foregoing discussion demonstrates, a rule governing the application of 
Terry
’s scope requirement to vehicle stops cannot be so permissive as to give police complete discretion in questioning the occupants of a stopped vehicle, nor can it be so limiting that any meaningful law enforcement activities are quashed. We believe the better approach, the one that strikes the proper balance, is that expressed by Judge Murphy in his partial concurrence and partial dissent in 
Holt
:

“
Terry
’s scope requirement is a common sense limitation on the power of law enforcement officers. It prevents law enforcement officials from fundamentally altering the nature of the stop by converting it into a general inquisition about past, present and future wrongdoing, absent an independent basis for reasonable articulable suspicion or probable cause. The scope doctrine does not, however, prevent officers from engaging in facially innocuous dialog which a detained motorist would not reasonably perceive as altering the fundamental nature of the stop.” 
Holt
, 264 F.3d at 1240 (Murphy, J., concurring in part and dissenting in part).

Thus, in determining whether police questioning during the course of a traffic stop satisfies 
Terry
’s scope requirement, we must consider, as an initial matter, whether the question is related to the initial justification for the stop. If the question is reasonably related to the purpose of the stop, no fourth amendment violation occurs. If the question is not reasonably related to the purpose of the stop, we must consider whether the law enforcement officer had a reasonable, articulable suspicion that would justify the question. If the question is so justified, no fourth amendment violation occurs. In the absence of a reasonable connection to the purpose of the stop or a reasonable, articulable suspicion, we must consider whether, in light of all the circumstances and common sense, the question impermissibly prolonged the detention or changed the fundamental nature of the stop.

Application of these principles to the present case leads us to conclude that Officer McCarthy’s mere request for identification from defendant did not render defendant’s otherwise lawful detention unreasonable. As noted previously, the stop of the vehicle in which defendant was riding was based on the officers’ observation that the front license plate was missing–a violation of our vehicle code. Defendant, however, was simply the front-seat passenger–a passive occupant–who was not implicated in the code violation, and who was not suspected of any other wrongdoing. Thus, the request for identification was not directly related to the initial justification for the stop and was not otherwise supported by a reasonable, articulable suspicion of criminal activity. Nonetheless, the officer’s question did not run afoul of the fourth amendment. The request for identification was made during the course of the stop while the driver was being questioned by the other officer and did not impermissibly prolong defendant’s detention. Further, we cannot say that the question changed the fundamental nature of the stop. A simple request for identification is facially innocuous. It does not suggest official interrogation and is not the type of question or request that would increase the confrontational nature of the encounter. We note, too, that defendant was under no obligation to answer or comply. In this regard, we reject the appellate court’s conclusion that the trial court implicitly and properly determined that defendant did not feel free to decline Officer McCarthy’s request. 324 Ill. App. 3d at 22-23. There is nothing in the trial court’s oral or written ruling to that effect.

CONCLUSION

In sum, we hold that the officer’s request for identification from defendant, who was lawfully detained, did not render his detention unreasonable under the fourth amendment to the United States Constitution (U.S. Const., amend. IV) or article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, §6). The judgments of the appellate and circuit courts to the contrary are reversed and this cause is remanded to the circuit court for further proceedings. We express no opinion as to the lawfulness of Officer McCarthy’s conduct after the request for identification. Defendant is free to raise any additional issues on remand.

Reversed and remanded.

JUSTICE RARICK took no part in the consideration or decision of this case.

JUSTICE THOMAS, specially concurring:

I agree with the majority’s conclusion that the police did not violate defendant’s fourth amendment rights when they asked to see his identification. I write separately, however, because I disagree with the majority’s decision to apply the same standard to both the driver and the passenger of a lawfully stopped vehicle. The majority improperly applies the 
Terry
 rules to a person not suspected of any wrongdoing, and I cannot join in this analysis.

The majority is correct that all of the occupants of a car are in one sense seized when the police stop the driver for a traffic violation. A person is seized “when, by means of physical force or a show of authority,” that person’s freedom of movement is restrained. 
United States v. Mendenhall
, 446 U.S. 544, 553, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877 (1980). Where the majority errs is in asserting that the driver and occupants are in the same position after the car has been pulled over. The majority implies that because the driver and passenger were both “seized” at the moment that the car was pulled over, they were both thereafter subjected to a full-blown fourth amendment seizure for the entire duration of the stop. No authority is cited for this proposition. The driver had been pulled over because the police observed a traffic violation. The stopping of the passenger was merely incidental to that of the driver. A traffic violation does not afford probable cause to stop a passenger, as it does for the driver. 
Maryland v. Wilson
, 519 U.S. 408, 413, 137 L. Ed. 2d 41, 47, 117 S. Ct. 882, 886 (1997).

The driver was required to submit to the officers’ lawful authority while they conducted the traffic stop and related investigation. 
People v. Brownlee
, 186 Ill. 2d 501, 520 (1999). This court has not held that passengers may be required to remain for the entire time that the police conduct their investigation of the driver. In 
People v. Gonzalez
, 184 Ill. 2d 402, 416-18 (1998), this court held that, with respect to passengers of a lawfully stopped vehicle, the police may order the passengers out of the car (
Wilson
, 519 U.S. 408, 137 L. Ed. 2d 41, 117 S. Ct. 882) and may also order a passenger who attempts to exit the car to remain briefly at the vehicle. These procedures are allowed because the public interest in officer safety outweighs the potential intrusion to the passenger’s liberty interests. 
Gonzalez
, 184 Ill. 2d at 418. This court specifically declined to hold, however, that the police could detain a passenger for the entire duration of the stop. 
Gonzalez
, 184 Ill. 2d at 418. The United States Supreme Court has likewise left this question open. 
Wilson
, 519 U.S. at 415 n.3, 137 L. Ed. 2d at 48 n.3, 117 S. Ct. at 886 n.3. Obviously, if the driver and passenger were both seized for the entire duration of the stop, as the majority asserts, this would not be an open question. Further, in reaching its holding in 
Wilson
, the United States Supreme Court specifically stated that the passenger’s situation is different from that of the driver: “
While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out
, the additional intrusion on the passenger is minimal.” (Emphasis added.) 
Wilson
, 519 U.S. at 414-15, 137 L. Ed. 2d at 48, 117 S. Ct. at 886.

The usual test for determining whether a fourth amendment seizure has occurred is whether “if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.”
 Mendenhall
, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877. This obviously applies to the driver, who was not free to leave until the police had finished processing the traffic stop. As noted above, however, defendant was not suspected of any wrongdoing. His freedom to leave was restricted not because the police were investigating him for violating the vehicle code but because he was a passenger in a car that had not yet reached its destination. The Supreme Court has held that there is a different test for situations in which the person’s freedom of movement is restricted by a factor independent of police conduct. In these situations, the appropriate test is whether a reasonable person would feel free to decline the officers’ requests or otherwise terminate the encounter. 
Florida v. Bostick
, 501 U.S. 429, 436, 115 L. Ed. 2d 389, 400, 111 S. Ct. 2382, 2387 (1991).

In 
Bostick
, the defendant was a passenger on a bus. Two uniformed officers boarded the bus and requested to see the defendant’s ticket and identification. After these items were returned to defendant, the officers asked to search his luggage. The defendant complied, and drugs were found. The United States Supreme Court held that whether defendant was “free to leave” was not the appropriate test:

“When police attempt to question a person who is walking down the street or through an airport lobby, it makes sense to inquire whether a reasonable person would feel free to continue walking. But when the person is seated on a bus and has no desire to leave, the degree to which a reasonable person would feel that he or she could leave is not an accurate measure of the coercive effect of the encounter.” 
Bostick
, 501 U.S. at 435-36, 115 L. Ed. 2d at 399, 111 S. Ct. at 2387.

See also 
United States v. Drayton
, 536 U.S. __, __,153 L. Ed. 2d 242, 252, 122 S. Ct. 2105, 2111 (2002).

The Seventh Circuit recently summarized this line of cases as follows:

“Under the fourth amendment, every search or seizure must be ‘reasonable,’ which normally entails some person-specific basis for suspicion. See 
Indianapolis v. Edmond
, 531 U.S. 32, 121 S. Ct. 447, 148 L. Ed. 2d 333 (2000). But the Supreme Court has held repeatedly that police may approach persons and ask questions or seek their permission to search, provided that the officers do not imply that answers or consent are obligatory. See, 
e.g.
, 
Florida v. Rodriguez
, 469 U.S. 1, 5-6, 105 S. Ct. 308, 83 L. Ed. 2d 165 (1984); 
INS v. Delgado
, 466 U.S. 210, 104 S. Ct. 1758, 80 L. Ed. 2d 247 (1984); 
Florida v. Royer
, 460 U.S. 491, 501, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983) (plurality opinion); 
United States v. Mendenhall
, 446 U.S. 544, 552-58, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). These requests are proper without regard to the absence of reasonable suspicion, the Court made clear in 
Florida v. Bostick
, 501 U.S. 429, 434, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991), because ‘mere police questioning does not constitute a seizure.’ As a result, ‘law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen.’ Ibid., quoting from 
Royer
, 460 U.S. at 497, 103 S. Ct. 1319. See also 
California v. Hodari D.
, 499 U.S. 621, 624, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991) (defining ‘seizure’ as ‘taking possession,’ a category that does not comprise questioning); 
Graham v. Connor
, 490 U.S. 386, 395 n.10, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (‘A “seizure” triggering the Fourth Amendment’s protections occurs only when government actors have, “by means of physical force or show of authority, ... in some way restrained the liberty of a citizen” ’) (quoting from 
Terry v. Ohio
, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)).

Most of these decisions concern questions asked of persons not under arrest (though often as a practical matter not free to walk away, see 
Bostick
 and 
Delgado
).” 
United States v. Childs
, 277 F.3d 947, 950 (7th Cir. 2002).

I would hold that the rule stated in the above cases applies to a passenger in a car that has been stopped because of a traffic violation. Thus, the proper test is whether a reasonable person would have felt free to decline the officer’s request or otherwise terminate the encounter. Here, the majority properly notes that the officer’s request for defendant’s identification was facially innocuous and was done in a nonthreatening manner. The officer did not demand to see the identification or convey the impression that defendant was required to comply. The encounter remained consensual and therefore defendant’s fourth amendment rights were not violated.

Curiously, this seems to be the same test that the majority follows, although it initially purports to be doing something else. First, as noted above, the majority gets off on the wrong foot by assuming that the initial “seizure” by the police thereafter subjected both the driver and the passenger to a fourth amendment seizure for the entire duration of the traffic stop. Then, instead of applying the 
Bostick
 test, the majority holds that the proper test for questioning a passenger is found in the partial concurrence and partial dissent to a Tenth Circuit opinion that involved questioning of a driver. See 
United States v. Holt
, 264 F.3d 1215, 1239-40 (10th Cir. 2001) (Murphy, J., concurring in part and dissenting in part). This test looks first to whether the question was related to the initial purpose for the stop or whether there was a reasonable suspicion of criminal activity. If the questioning is not related to the initial purpose of the stop and there is no suspicion of criminal activity, the next inquiry is whether the question prolonged the duration of the stop or changed the fundamental nature of the stop.

Once it comes time to apply this test, however, the majority seems to rely on the consensual nature of the encounter. The majority notes that the questioning was nonthreatening and that defendant would have felt free to decline the request. Thus, it appears that the majority is actually applying 
Bostick
 rather than the 
Holt
 partial concurrence and partial dissent. The lower courts and the police will find the majority’s rule difficult to follow because the majority does not explain what type of questioning would change the fundamental nature of the stop. All we know from the majority opinion is that interrogating a passenger about his identity does not change the fundamental nature of an investigation of a driver for a license plate violation. More explanation is required here. Because in this case the passenger’s identity was in no way relevant to defendant’s violation of the vehicle code, in future cases it will be difficult for the lower courts to determine what does and does not change the fundamental nature of a stop. The majority has created this problem by improperly holding that questioning of the passenger must be viewed as part of the investigation of the driver.

In sum, I agree that the police did not violate defendant’s fourth amendment rights by asking him for his identification. I would reach that result, however, by applying the test set forth in 
Bostick
. The majority improperly holds that the questioning of the passenger was restricted by the rules governing the stop of the driver, and thus I cannot join its opinion.

JUSTICE GARMAN joins in this special concurrence.

FOOTNOTES
1:     
1
This aspect of the 
Terry
 standard has been codified in our Code of Criminal Procedure of 1963. 725 ILCS 5/107–14 (West 2000); 
People v. Wardlow
, 183 Ill. 2d 306, 310 (1998). 

2:     
2
The fact that most traffic stops proceed like “
Terry
 stops,” and are thus analyzed under 
Terry
 principles, does not mean that where a stop is based on probable cause, an arrest of the driver or passenger is necessarily prohibited under the fourth amendment. See 
Atwater v. City of Lago Vista
, 532 U.S. 318, 149 L. Ed. 2d 549, 121 S. Ct. 1536 (2001) (holding that if an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence–such as a misdemeanor seatbelt violation punishable only by a fine–the officer may, without violating the fourth amendment, arrest the offender).