# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2020-0132, <u>State of New Hampshire v. Marcie Janvrin</u>, the court on March 18, 2021, issued the following order:**

Having considered the parties' briefs and the record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).

Following a bench trial, the defendant, Marcie Janvrin, was convicted of the felony offenses of possession of a controlled drug and falsifying physical evidence.  On appeal, she argues that, because the police stopped her after observing that her vehicle had an invalid inspection sticker and then unlawfully expanded the stop, the Trial Court (<u>Schulman</u>, J.) erred in denying her motion to suppress.  We affirm.

The trial court found the following facts.  On the night before Seabrook police stopped her, Massachusetts police reported to them that the defendant and her vehicle were seen on a street in Lawrence, Massachusetts that was known for "high drug activity."  After leaving Lawrence, the defendant made short stops at three Seabrook residences; Seabrook police were familiar with the occupants of the residences and knew that they were "presently involved with drugs."  On the following night, Massachusetts police officers again observed the defendant in an area in Lawrence known for illegal drug sales and drug activity.

A Massachusetts police officer then followed her to Seabrook where she was stopped by Seabrook police.  Prior to making the stop, an officer noticed the inspection sticker on her vehicle had expired.  The defendant spoke to the officer through the vehicle's back window because the front driver's side window could not be rolled down.  When asked where she was coming from, the defendant stated that she had been playing Keno.  The officer knew this was untrue because the Massachusetts police had followed her from Lawrence to Seabrook and knew that she had not made any intermediate stops.  When the officer disclosed that he knew this was not true, the defendant offered another false itinerary.  After she was advised that police had followed her while she was in Lawrence, the defendant stated that she went there to purchase crack and had smoked it on her return trip to Seabrook.  She also disclosed that there was a crack pipe in the car and, when asked, gave the officer consent to seize it.  The officer also noticed a bulge in the defendant's clothing.  When he asked her

whether she had any illegal drugs on her, the defendant "put her hands down her pants and removed a second crack pipe." Apparent residue was visible on at least one of the crack pipes.

The defendant was arrested. She filed a motion to suppress, arguing that although the invalid inspection sticker provided a basis for the original traffic stop, the police had no justification "to expand that routine traffic stop beyond the time it took to resolve the alleged inspection sticker violation." The trial court denied her motion, ruling that there was "reasonable suspicion to stop defendant for possible drug-related offenses (and for an expired inspection sticker) and the scope of the stop never extended beyond the reasonable and articulable suspicion."

On appeal, the defendant concedes that there was reasonable suspicion to seize her for driving with an invalid inspection sticker. She argues, however, that the police unlawfully expanded the traffic stop by asking her "where she was coming from, asking her to step out of the vehicle, and questioning her about drug activity." She cites both the State and Federal Constitutions to argue that the expanded scope of the stop was unconstitutional. We first address her claims under the State Constitution and rely upon federal law only to aid our analysis. See State v. Ball, 124 N.H. 226, 231-33 (1983).

When we review a trial court's order on a motion to suppress, we accept its factual findings unless they lack support in the record or are clearly erroneous. State v. Perez, 173 N.H. 251, 256 (2020). We conduct a de novo review of the trial court's legal conclusions. Id.

A traffic stop is a seizure for purposes of both the state and federal constitutions; its scope must be carefully tailored to its underlying justification. State v. McKinnon-Andrews, 151 N.H. 19, 22-23 (2004). It may be expanded to investigate other illegal activity "only if the officer has a reasonable and articulable suspicion that other criminal activity is afoot." Perez, 173 N.H. at 257 (quotation omitted). To determine whether an officer's inquiry unlawfully expanded the scope of an otherwise valid traffic stop, we employ the following analysis:

> If the question is reasonably related to the purpose of the stop, no constitutional violation occurs. If the question is not reasonably related to the purpose of the stop, we must consider whether the law enforcement officer had a reasonable, articulable suspicion that would justify the question. If the question is so justified, no constitutional violation occurs. In the absence of a reasonable connection to the purpose of the stop or a reasonable, articulable suspicion, we must consider whether in light of all the

circumstances and common sense, the question impermissibly prolonged the detention or changed the fundamental nature of the stop.

Id.

The defendant argues that "the police lacked reasonable suspicion to pursue a drug investigation until the moment she admitted to buying and using drugs prior to being stopped." She contends that the State's evidence of both prior drug-related police contact with her and her presence in Lawrence in an area known for high drug activity lacked sufficient detail to make it useful in a reasonable suspicion analysis. We will assume without deciding that, at the time that the police stopped the defendant, they lacked reasonable suspicion to pursue a drug investigation.

In State v. McKinnon-Andrews, we addressed the scope of protections provided by the State and Federal Constitutions on the duration and scope of an investigatory stop. McKinnon-Andrews, 151 N.H. at 23-25. Observing that state and federal courts disagreed on the protections provided by the Fourth Amendment, we adopted the approach taken by the Illinois Supreme Court in People v. Gonzalez, 789 N.E.2d 260, 270 (Ill. 2003). Id. This approach recognizes that police officers may engage in "facially innocuous dialog which a detained motorist would not reasonably perceive as altering the fundamental nature of the stop." Id. at 25 (quotation omitted). Inquiries about a defendant's itinerary, including where she had been, have been described as "routine." See United States v. Chhien, 266 F.3d 1, 9 (1st Cir. 2001). In this case, the initial question posed by the officer about the defendant's travel falls within the routine category, and was thus permissible.

The defendant challenges both the trial court's finding that she was asked to step out of her vehicle "to address the expired inspection sticker" and its conclusion that the request "did not change the fundamental nature of the stop." She argues that the police had already communicated with her about the expired inspection sticker through the rear window "without difficulty" and that the absence of additional questions about the sticker after she exited the vehicle supports her contention that the trial court erred when it found that the exit request was to further address the invalid inspection sticker.

The trial court found that, at the time of the stop, "the police had reasonable suspicion (but certainly not probable cause) that the defendant might be in possession of drugs" which supported a brief Terry detention and some brief questioning." See Terry v. Ohio, 392 U.S. 1 (1968). The court further found that the expired inspection sticker provided "independent reasonable suspicion for the stop."

3

In this case, whether the basis for the exit request was to further investigation of the expired inspection sticker or of possession of illegal drugs does not alter our conclusion.  See State v. McBreairty, 142 N.H. 12, 15 (1997) (objective test applies when determining whether valid justification exists for investigatory stop).  The officer who initiated the stop testified at the suppression hearing that, at the time that she was asked to exit the vehicle, the defendant had already lied to him about her travel that night.  The statements of fact set forth in both of the parties' briefs are consistent with this testimony.  The defendant's dishonest response raised the officer's suspicion.  This response, coupled with the officer's knowledge that she had travelled on both nights to an area "known for illegal drug sales" and, upon returning to Seabrook on the previous night, stopped at multiple houses known for illegal drug activity, provided the officer with reasonable, articulable suspicion that the defendant was engaged in illegal drug-related activity.

Because we conclude that the officer's initial question about the defendant's itinerary did not alter the fundamental nature of the stop, and that the defendant's dishonest response, combined with other information known to the officer, created reasonable suspicion that she was involved in illegal activity before he expanded the scope of the stop, we find no violation of the State Constitution.  See McKinnon-Andrews, 151 N.H.  at 25-27.  The Federal Constitution provides no greater protection to the defendant under these circumstances.  See Muehler v. Mena, 544 U.S. 93, 100-02 (2005); Whren v. United States, 517 U.S. 806, 813 (1996); United States v. Dion, 859 F.3d 114, 123-28 (1st Cir. 2017).  We therefore reach the same conclusion under the Federal Constitution.

Affirmed.


Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.


**Timothy A. Gudas,
Clerk**

4