THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DAVID
P. STARBUCK, Defendant-Appellee.

Third District   No. 3—04—0376

Opinion filed May 19, 2005.

SCHMIDT, J., specially concurring.

James Glasgow, State's Attorney, of Joliet (Lawrence M. Bauer and
Richard T. Leonard, both of State's Attorneys Appellate Prosecutor's Office, of
counsel), for the People.

Donald MacNeil, Raymond G. Wigell, and Layne C. Marino, all of Wigell
& Associates, Ltd., of Matteson, for appellee.

JUSTICE LYTTON delivered the opinion of the court:

Defendant David P. Starbuck was charged with unlawful posses-
sion of a controlled substance (720 ILCS 570/402(c) (West 2002)) and
unlawful use of a weapon (720 ILCS 5/24—1(a)(4) (West 2002)). The
trial court granted defendant's motion to suppress the evidence. On
appeal, the State argues that the search of defendant's vehicle was
valid under the fourth amendment and the trial court erred in apply-

ing the test set forth in *People v. Gonzalez*, 204 Ill. 2d 220, 789 N.E.2d 260 (2003). We reverse and remand for further proceedings.

At the motion to suppress hearing, Officer Mark Klausner testified that on April 23, 2004, he was on duty as a police officer for the City of New Lennox. At approximately 8 a.m. he met with defendant's estranged wife, Cynthia Starbuck. Cynthia informed him that defendant had called her the night before and stated that he was on his way home from Mississippi to take the children from her. She told Klausner that defendant always carried a gun under the front seat of his truck. Cynthia had obtained an emergency order of protection against him.

At 1 p.m. that same day, Cynthia called 911 and stated that her husband was on the premises and that he was not wanted there. The dispatcher informed Officer Klausner, and he reported to the scene with the emergency order of protection. When Klausner arrived, he observed a truck parked on the street in front of Cynthia's house. He walked around the house to the backyard with his gun drawn. Once in the backyard, he noticed defendant and another person (later identified as defendant's father-in-law) talking to each other. Officer Klausner placed his gun back in his holster, approached the two men and asked defendant if he could speak with him. Defendant complied. They walked around the front of the house to Officer Klausner's squad car. Klausner handed the order of protection to defendant, explained the terms of the order and told defendant that he had to leave the area. At that point, defendant was free to go.

Officer Klausner then asked defendant for consent to pat him down for the officer's personal safety. Defendant agreed. Klausner's search of defendant's person revealed no weapons or other contraband. Klausner then asked for and received consent to search defendant's truck. Officer Klausner stated that he requested consent to search the vehicle for safety purposes. Before searching the vehicle, Klausner asked defendant if he had any weapons in the truck. Defendant responded that he did and that it was under the front driver's seat. By this time, other officers had arrived at the scene. Officer Klausner searched defendant's vehicle and found an unloaded weapon under the driver's seat and a loaded magazine clip in the glove box. He also found a brown eyeglass container in the front driver's-side door pocket. When he opened the case, he discovered a glass pipe with a brown residue and a small plastic bag containing a white crystal-like substance. Officer Klausner instructed another officer to place defendant under arrest. One of the other officers at the scene also testified. His testimony corroborated Officer Klausner's recollection of the encounter.

Defendant testified that he was meeting his wife and children on the day in question to take them to an amusement park. His wife had agreed to the trip on the phone the day before and had told him that she loved him. He testified that he did not give Officer Klausner permission to pat him down and that he objected to the search of his truck.

The trial court noted that the officers who testified were credible. The court then found that Officer Klausner's questions and search of the truck were not reasonably related to the initial purpose of the call, citing *People v. Gonzalez*, 204 Ill. 2d 220, 789 N.E.2d 260 (2003), and granted the motion to suppress.

## ANALYSIS

The State argues that the trial court erred in granting the motion to suppress because defendant's consent to search his vehicle was valid. Defendant argues that he did not consent to the search and that, even assuming he had given consent, the evidence must be suppressed as fruit of the poisonous tree because the officer's questions impermissibly prolonged his detention. See *Gonzalez*, 204 Ill. 2d 220, 789 N.E.2d 260.

## I. Standard of Review

■ The ruling of a trial court on a motion to suppress evidence frequently presents mixed questions of fact and of law. Because the trier of fact is in the best position to review the evidence and weigh the credibility of the witnesses, the findings of fact of the trial court will not be reversed unless they are against the manifest weight of the evidence. *People v. Sorenson*, 196 Ill. 2d 425, 752 N.E.2d 1078 (2001). However, we review *de novo* the ultimate conclusion of the trial court as to the existence of probable cause or reasonable suspicion. *Sorenson*, 196 Ill. 2d 425, 752 N.E.2d 1078.

## II. Unreasonable Search and Seizure

The fourth amendment of the United States Constitution guarantees the "right of people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Reasonableness under the fourth amendment generally requires a warrant supported by probable cause. *People v. Flowers*, 179 Ill. 2d 257, 688 N.E.2d 626 (1997). One exception to the warrant requirement was recognized by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), in which the Court held that where an officer observes unusual conduct which leads him to reasonably conclude that criminal activity may be afoot, the officer may briefly stop the suspicious person and make reasonable inquiries aimed at confirming or dispelling his suspicions.

In this case, the State argues that the trial court erred in applying the *Gonzalez* factors to the officer's investigatory questions. Instead, the State maintains that the officer's conduct should have been analyzed under a traditional *Terry* analysis.

In *Gonzalez*, a police officer stopped a vehicle, approached the car and eventually asked the passenger in the car for identification. The question before the court involved the reasonableness of an officer's inquiries during the course of an otherwise valid traffic stop. The supreme court applied a three-tiered test and concluded that an officer's mere request for a passenger's identification during a valid traffic stop does not render his detention unconstitutionally unreasonable.

In *Terry*, the defendant was stopped and subsequently searched for weapons on a public sidewalk in downtown Cleveland. The question before the Court was whether it is always unreasonable for officers to seize a person and subject him to a limited search for weapons absent probable cause to arrest. The *Terry* Court noted the great need for law enforcement officers to protect themselves from violence in a situation where they lacked probable cause for an arrest, but acknowledged a private individual's rights under the fourth amendment. The Court then determined that an officer may conduct a limited search for weapons once he reasonably concludes that the person whom he legitimately stopped poses a threat to his safety or the safety of others. *Terry*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

In this case, Officer Klausner did not make a routine traffic stop of defendant. He was called to the scene of a residence to serve an order of protection and to respond to a potential threat that defendant was attempting to forcibly remove his children from the premises. We believe that though *Gonzalez* is applicable to traffic stops, the traditional *Terry* analysis applies to the facts of this case.

To justify a search under the traditional *Terry* analysis, the officer need not be absolutely certain that the individual is armed. The issue is whether, given the circumstances, a reasonably prudent person would be warranted in the belief that his safety or that of another was in danger. *Sorenson*, 196 Ill. 2d 425, 752 N.E.2d 1078. Since the purpose of the search is to protect the officer and others, the search must be limited in scope to a search designed to discover guns, knives, clubs, or other weapons that can be used to assault an individual. *People v. Gonzalez*, 184 Ill. 2d 402, 704 N.E.2d 375 (1998). The search may, however, extend beyond the defendant's person to the area within his immediate control from which he might gain access to a weapon. *Michigan v. Long*, 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469 (1983) (search of the compartment of defendant's vehicle was within permissible scope of *Terry* search).

Here, the officer was justified in asking defendant if he could search his vehicle for the protection of the officer and others at the scene. Klausner testified that he requested permission to search defendant's truck for safety purposes. The trial court found the officer's testimony to be credible, and the record does not refute that finding. The officer was at the scene to serve an emergency order of protection on the defendant and to prevent defendant from forcibly taking his children from the premises. The officer had been told earlier that day that defendant was traveling to the area from Mississippi to take his children from his estranged wife. He had been told by defendant's wife that defendant always carried a gun under the front seat of his truck. He knew that a 911 call had been made, that defendant was at the wife's house and that he was not wanted on the premises. Given these circumstances, a reasonably prudent person would be warranted in his belief that his safety and the safety of others on the premises may be at risk.

In addition, the search was sufficiently limited in scope to survive a fourth amendment challenge. It is permissible for an officer making a protective search under *Terry* to search the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, so long as the officer possesses a reasonable belief, based on specific, articulable facts, that the suspect is dangerous and may gain immediate control of a weapon. See *Long*, 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469. Officer Klausner possessed information that defendant carried a gun under the seat of his truck. Defendant confirmed that information. Defendant had also been asked to leave the premises. Based on these specific facts, the officer could have reasonably believed that defendant would return to his vehicle and gain immediate access to a weapon. The search of defendant's truck was reasonably based on specific concerns for the safety and protection of everyone involved. The search of the vehicle was therefore justified under *Terry* and did not violate defendant's fourth amendment rights. The trial court's ruling to the contrary was improper as a matter of law.

## CONCLUSION

The judgment of the circuit court of Will County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

O'BRIEN, J., concurs.

JUSTICE SCHMIDT, specially concurring:

While I concur in the result, I write separately because I do not concur entirely with the analysis. While it is clear that the officer was justified, under these facts in searching the vehicle for the protection of the officer and others at the scene, the majority states that, "Here, the officer was justified in asking defendant if he could search his vehicle for the protection of the officer and the others at the scene." 358 Ill. App. 3d at 238.

The United States Supreme Court had made it abundantly clear that it has rejected the notion that questioning, including requests for consent to search, must be related to the initial purpose for the police contact. *Illinois v. Caballes*, 543 U.S. 405, 160 L. Ed. 2d 842, 125 S. Ct. 834 (2005); *Muehler v. Mena*, 544 U.S. 93, 161 L.Ed.2d 299, 125 S.Ct. 1465 (2005).

To the extent that *Gonzalez* or other Illinois cases hold to the contrary, they are no longer good law. We are bound by the decisions of the United States Supreme Court on federal constitutional issues regardless of whether members of the court agree or disagree.

Defendant consented to the search of the vehicle. The officer did not need "justification" to request consent to search. *Muehler v. Mena*, 544 U.S. 93, 161 L.Ed.2d 299, 125 S.Ct. 1465.