No. 2--05--0714

---

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04--CF--1170 |
| TYWAN M. STARNES, | ) ) | Honorable John R. Truitt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

---

JUSTICE HUTCHINSON delivered the opinion of the court:

After a jury trial, defendant, Tywan M. Starnes, was convicted of unlawfully possessing, with the intent to deliver, more than 30 grams but not more than 500 grams of a substance containing cannabis, a Class 3 felony (720 ILCS 550/5(d) (West 2004)). He was sentenced to four years and six months in prison. After the trial court denied his motion to reconsider the sentence, defendant appealed. On appeal, he contends that (1) his trial counsel was ineffective for failing to pursue a hearing or ruling on a motion to suppress evidence; and (2) his sentence is excessive. We affirm.

After defendant was indicted on one count each of unlawful possession of cannabis with the intent to deliver and unlawful possession of cannabis (720 ILCS 550/4(d) (West 2004)), his attorney moved to suppress evidence, including a cell phone, cash, and the alleged cannabis, contending that

the evidence was obtained by illegal searches of defendant's person and the car that he was driving. The attorney never sought a hearing on the motion, and it was never heard or ruled on.

At trial, the State called Rockford police officer Tammy Kuczynski, who testified as follows. On April 13, 2004, at 1:53 a.m., she was on patrol alone in a high-crime area of Rockford. She was driving west on Broadway when, about two blocks ahead of her, a car facing west pulled away from the curb and continued west. There was a big cloud of smoke behind the car as it turned south on 8th Street. The car slowed down but ran a stop sign at 8th Street and 15th Avenue. Kuczynski stopped the car. The driver, defendant, was the sole occupant. As soon as he pulled over, he "leaned unnaturally to the right" with his head facing forward, moved his body "forward and backwards," then moved forward and sat up straight. Kuczynski suspected that he was concealing something. She called for backup.

Kuczynski walked up to the open driver's-side window and asked defendant for identification and proof of insurance. Defendant gave his name but said that he had just bought the car and had no insurance yet. Kuczynski asked him what had caused the cloud of smoke. He replied that engine problems had led to trouble with the exhaust. Four officers in three squad cars appeared and parked behind Kuczynski. At Kuczynski's direction, defendant exited the car. She asked whether he had any weapons on him, and he said no. Kuczynski asked defendant for permission to search him. He told her to go ahead. Kuczynski patted defendant down and found a large amount of cash in his right pants pocket. Kuczynski took the money out, then returned it to defendant's pants pocket. She found it unusual that he was carrying so much money, because he had said that he had only a temporary job. Kuczynski asked defendant how much money he had; defendant said $900. Other

than the large amount of cash, he had no "unusual items," such as drugs or drug paraphernalia, on him.

After searching defendant, Kuczynski asked his permission to search the car. Defendant said that there was "nothin' in there," and he consented. At Kuczynski's direction, defendant sat in her squad car with Officer Jason Oberts. Kuczynski opened the driver's-side door of defendant's car. Kneeling down, she saw that a cloth bag was partially hidden under the floorboard carpet in the area where defendant had made his unusual movements. Kuczynski pulled the bag out a little way, opened it, and saw that it contained three baggies with a green leafy substance inside. Kuczynski suspected that the substance was cannabis. She also saw a cell phone on the front seat.

Kuczynski took the cloth bag and the cell phone to her squad car and started to write tickets for failing to stop at a stop sign, driving a car without insurance, and violating an ordinance prohibiting loud mufflers. She ran a check that showed that the car was registered to Michael Hammer. Defendant said that Hammer had lent him the car. Defendant was handcuffed and taken to the police station. Later, Kuczynski conducted tests that indicated that the baggies seized from defendant contained cannabis.

Oberts testified that, at 1:52 a.m. on April 13, 2004, Kuczynski called him for assistance. When he arrived, he saw that Kuczynski had pulled over defendant's car and was speaking to defendant. Two State witnesses' testimony established that the plant material in the baggies weighed 40.7 grams; that it contained cannabis; and that the cannabis was packaged for sale.

For defendant, Michael Hammer testified that early in the morning of April 13, 2004, defendant expressed interest in buying Hammer's car, so Hammer let him test drive it. Carrie Northrup, defendant's girlfriend, testified that, on April 13, 2004, they lived together and were

looking for a new home. As of that date, Northrup was working full-time and had saved $2,000. Her bank account had been closed and she felt unsafe carrying the money herself, so, about a week before April 13, 2004, she gave defendant the money to hold.

The jury convicted defendant. The case proceeded to a sentencing hearing. The presentence report reveals that defendant, who was born December 12, 1976, has no juvenile adjudications but does have a substantial adult criminal record. In addition to various traffic offenses and misdemeanors, it includes the following. In April 1997, in Texas, defendant was convicted of possession of a controlled substance and was sentenced to a year of "confinement." In April 1998, he was convicted of unlawful use of a weapon and received two years' probation. In May 1999, he was convicted of unlawful possession of cannabis and received a year of conditional discharge. In May 2000, he was convicted of a cannabis-related offense and was sentenced to two years' probation. In December 2001, he was convicted of criminal fortification of a residence, a Class 3 felony. According to the State's Attorney's office, cannabis and a loaded handgun were found inside the house. Defendant was sentenced to four years' incarceration but was paroled in December 2002.

At the sentencing hearing, Greg Yalden testified that, on June 27, 2004, he was a deputy with the Winnebago County sheriff's police. At 9:40 p.m. that day, he stopped a car in Rockford. The car was registered to Michael Hammer, but it was being driven by defendant, who was free on bond. He had no license and no identification, and the inside of the car smelled strongly of burnt cannabis. Yalden patted down defendant and discovered that he had $1,115 in cash and tobacco from a cigar. Yalden inferred that defendant had made a "blunt" by hollowing out a cigar and filling it with marijuana. Inside the car was a cloth bag containing three plastic bags, with a gross weight of 42.7

grams. Inside the plastic bags was a substance that later tested positive for "the probable presence of cannabis."

Nancy Schultz, the probation officer who supervised defendant in this case, testified that, since posting bond in September 2004, defendant had fully complied with the terms of his release by reporting when required, seeking employment, and letting the probation office know his address. To Schultz's knowledge, he had not violated his bond in that period. In allocution, defendant "apologize[d] for [his] record" and acknowledged that he had to "find a way to get out of trouble." He said that he hoped to receive probation so that he could get a job and put the past behind him.

The trial court sentenced defendant to four years and six months in prison. The trial judge explained that, in mitigation, defendant's offense did not cause or threaten serious harm to others, and his prior crimes were nonviolent. In aggravation, defendant had several prior felony convictions, and Yalden's testimony established that, about two months after the present offense, defendant illegally possessed cannabis while he was out on bond. Thus, while acknowledging Schultz's testimony in mitigation, the trial judge concluded that probation had not worked in the past for defendant and would be inappropriate here. After his motion to reconsider his sentence was denied, defendant timely appealed.

Defendant argues first that his trial counsel was ineffective for failing to obtain a hearing or ruling on the motion to suppress the evidence that was seized on April 13, 2004. To succeed on a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance was objectively unreasonable; and (2) it is reasonably probable that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 688, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064-65, 2068

(1984); People v. Evans, 369 Ill. App. 3d 366, 383 (2006). We conclude that defendant has not established prejudice. Because both prongs of the Strickland test must be satisfied for an ineffectiveness claim to succeed (People v. Williams, 368 Ill. App. 3d 616, 622 (2006)), we need not consider whether defendant's attorney performed unreasonably in not pursuing the motion.

Defendant asserts that it is reasonably probable that his motion would have been granted because (1) the search of his person was unconstitutional, as it was not supported by reasonable suspicion (or probable cause) and exceeded the scope of the traffic stop; and (2) the search of his car was unconstitutional because Kuczynski's request for permission to search exceeded the scope of the traffic stop. For the following reasons, we disagree.

The resolution of defendant's contention requires an understanding of the state of the law in light of Illinois v. Caballes, 543 U.S. 405, 160 L. Ed. 2d 842, 125 S. Ct. 834 (2005), Muehler v. Mena, 544 U.S. 93, 161 L. Ed. 2d 299, 125 S. Ct. 1465 (2005), People v. Caballes, 221 Ill. 2d 282, 335-36 (2006) (Caballes II), and appellate opinions applying these decisions. These opinions supersede People v. Gonzalez, 204 Ill. 2d 220 (2003), insofar as it holds that the questioning of a defendant who is lawfully stopped necessarily violates the fourth amendment if it is unrelated in scope to the circumstances that justified the stop (see Gonzalez, 204 Ill. 2d at 229). In People v. Caballes, 207 Ill. 2d 504 (2003), rev'd & remanded, Illinois v. Caballes, 543 U.S. 405, 160 L. Ed. 2d 842, 125 S. Ct. 834 (2005), the defendant was lawfully stopped for a traffic offense. The officer had no reasonable suspicion that the defendant's car contained marijuana. While the officer was writing up the traffic ticket, a second officer arrived with a drug-detection dog. The dog sniffed the car and alerted the officers to the presence of drugs. A search of the car disclosed marijuana, and the defendant was arrested and later charged with and convicted of cannabis trafficking. Caballes, 207

Ill. 2d at 507-08. Relying on the Gonzalez test's scope requirement, the supreme court held that the cannabis should have been suppressed because, as the police had a mere hunch that the car might contain drugs, the drug sniff was an "unjustified expansion of the scope of the stop." Caballes, 207 Ill. 2d at 510.

The Supreme Court reversed. The Court first accepted "the state court's conclusion that the duration of the stop in this case was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop" (Caballes, 543 U.S. at 408, 160 L. Ed. 2d at 846-47, 125 S. Ct. at 837). Thus, the only issue was whether the drug sniff was improper because it went beyond the scope of the traffic stop. The Court held that, although the drug sniff was unrelated to the original purpose of the traffic stop, that fact did not matter legally. That was because the drug sniff itself was not a search, as it could reveal nothing but contraband and thus infringed no legitimate privacy interest of the defendant. Caballes, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837. As Justice Ginsburg's dissent recognized, the Court's opinion abandoned any rule that, following a proper stop, police action must be reasonably related in scope to the circumstances that justified the stop. Caballes, 543 U.S. at 420, 160 L. Ed. 2d at 855, 125 S. Ct. at 845 (Ginsburg, J., dissenting).

About two months after Caballes, the Court held that, if the police properly seize a person during a legitimate search, they do not necessarily need reasonable suspicion to question him or her about matters unrelated to the original purpose of the search, unless the questioning impermissibly prolongs the original detention. Muehler, 544 U.S. at 101, 161 L. Ed. 2d at 308-09, 125 S. Ct. at 1471-72 (2005). This is because, like a canine drug sniff, mere police questioning is not a seizure. Muehler, 544 U.S. at 101, 161 L. Ed. 2d at 308, 125 S. Ct. at 1471.

On remand in Caballes, the supreme court held that the drug evidence was properly admitted because the drug sniff did not violate the fourth amendment. Caballes II, 221 Ill. 2d at 335-36. The court declined to hold that the Illinois Constitution's search-and-seizure clause (Ill. Const. 1970, art. I, §6) provided any greater protection than did the fourth amendment. Caballes II, 221 Ill. 2d at 335-36. Thus, the court acquiesced in the Supreme Court's holding that, if a traffic stop is proper, police action that does not unreasonably prolong the stop or independently trigger the fourth amendment is permissible even if it goes beyond the scope of the stop. The court unmistakably, albeit not explicitly, abandoned the scope requirement of the Gonzalez test.

Illinois opinions after Caballes II have also recognized that Gonzalez's scope requirement is no longer viable. In People v. Driggers, 222 Ill. 2d 65 (2006), another drug-sniff case, the court held that police action that does not unreasonably prolong a lawful traffic stop or independently trigger fourth amendment concerns is not forbidden merely because it changes the character of the stop. Driggers, 222 Ill. 2d at 72-73. In People v. Conner, 358 Ill. App. 3d 945, 961-62 (2005), the court held that, because the police properly seized the defendant during a lawful search of a house, they did not need reasonable suspicion to ask him his name and date of birth and to run a warrant check on him, as these actions did not prolong the detention. The court recognized that, in the wake of Caballes and Muehler, questioning that does not unreasonably prolong the original detention or independently trigger the fourth amendment need not be related in scope to the original detention. Conner, 358 Ill. App. 3d at 961-62.

In People v. Starbuck, 358 Ill. App. 3d 234 (2005), the defendant had driven his truck to his estranged wife's house even though she had an order of protection against him. In response to the wife's call, a police officer arrived at her house and engaged in a consensual conversation with the

defendant, telling him to leave. With the defendant's consent, the officer frisked him and searched his truck. In the truck, the officer found weapons and drugs, and he arrested the defendant. The trial court suppressed the weapons and drugs, holding that, under Gonzalez, the officer's questions and search of the truck were not reasonably related to his original purpose. Starbuck, 358 Ill. App. 3d at 235-36. The appellate court reversed, holding that the request to search the defendant's truck was proper under Gonzalez and Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), because the officer had reasonable grounds to be concerned about his safety and searched only areas of the truck where a weapon might be placed. Starbuck, 358 Ill. App. 3d at 238. In a special concurrence, Justice Schmidt stated that the search was validated by the defendant's consent, regardless of whether it was related to the officer's original purpose. Justice Schmidt noted that, in Caballes and Muehler, the Supreme Court clearly "rejected the notion that questioning, including requests for consent to search, must be related to the initial purpose for the police contact" and that, insofar as Gonzalez holds otherwise, it is "no longer good law." Starbuck, 358 Ill. App. 3d at 239 (Schmidt, J., specially concurring).

In People v. Roberson, 367 Ill. App. 3d 193 (2006), an officer properly stopped the defendant for a traffic violation, then ran a check that disclosed an outstanding arrest warrant for him. The officer arrested the defendant, searched his car incident to the arrest, and discovered drugs. The trial court suppressed the drugs, holding that, under People v. Harris, 207 Ill. 2d 515 (2003), vacated & remanded, Illinois v. Harris, 543 U.S. 1143, 161 L. Ed. 2d 94, 125 S. Ct. 1292 (2005), the warrant check was improper because it exceeded the scope of the traffic stop. The appellate court reversed, noting that the Supreme Court had vacated Harris and remanded that cause for our supreme court to consider in light of Caballes. The appellate court next observed that, under Caballes and Conner,

the warrant check was impermissible only if it (1) caused the detention to last longer than was reasonably necessary for the traffic stop; or (2) infringed on a legitimate privacy interest of the defendant. Roberson, 367 Ill. App. 3d at 201. Because the warrant check did neither, it was permissible even though it exceeded the scope of the stop. Roberson, 367 Ill. App. 3d at 201.

With these authorities in mind, we turn to defendant's contention in this case that there is a reasonable probability that the trial court would have held that the pat-down search of his person was improper. Defendant contends that the facts known to Kuczynski gave her neither a reasonable suspicion that defendant was armed nor probable cause to believe that he was committing an offense, such that she could search him for evidence of a crime. Defendant overlooks that Kuczynski testified that he consented to the search. Consent to a search eliminates the need for probable cause or a warrant. People v. Phillips, 264 Ill. App. 3d 213, 217 (1994). Under Caballes, Muehler, and Caballes II, Kuczynski's mere request for consent to the search did not independently trigger the fourth amendment, and the fact that it exceeded the scope of the traffic stop is legally irrelevant. See Starbuck, 358 Ill. App. 3d at 239 (Schmidt, J., specially concurring). Defendant does not contend that the request unreasonably prolonged the stop, and we see nothing to support such a contention. Thus, defendant has not shown prejudice from his trial attorney's failure to pursue the motion to suppress insofar as it concerned evidence obtained through the search of defendant's person.

Defendant contends second that his trial attorney was ineffective for failing to pursue the motion to suppress the evidence obtained from the search of the car that defendant was driving. However, defendant again overlooks that Kuczynski testified that the search was consensual. Therefore, as with the search of defendant's person, there is no basis to argue that the trial court probably would have suppressed the fruits of the car search. Defendant does not contend that

Kuczynski's mere request to search the car unduly prolonged the traffic stop, and the request did not independently implicate the fourth amendment. Even if, arguendo, Kuczynski's request enlarged the scope of the detention, that is legally irrelevant under the Caballes line of cases. Therefore, it is not reasonably probable that the trial court would have suppressed the evidence seized from the car, and counsel was not ineffective for failing to pursue that aspect of the motion to suppress.

Defendant relies primarily on People v. Sloup, 359 Ill. App. 3d 841, 849 (2005), in which this court held that the officer's request to search the defendant's car violated the fourth amendment because it fundamentally changed the nature of the traffic stop. In light of the Caballes line of cases, we believe that Sloup is not good law, as it does not recognize that police questioning does not violate the fourth amendment merely because it exceeds the scope of the original detention. Therefore, we do not follow Sloup.

Having rejected defendant's claim that his trial counsel was ineffective, we turn to his remaining claim: that the trial court abused its discretion in sentencing him to 4½ years' imprisonment for possessing cannabis with the intent to deliver. Defendant's offense was a Class 3 felony (see 720 ILCS 550/5(d) (West 2004)), with a sentencing range of two to five years' imprisonment (see 730 ILCS 5/5--8--1(a)(6) (West 2004)). Defendant's prior convictions also made him eligible for an extended-term sentence (see 730 ILCS 5/5--5--3.2(b)(1) (West 2004)) of 5 to 10 years' imprisonment (see 730 ILCS 5/5--8--2(a)(5) (West 2004)). Defendant contends that his sentence, which is only six months short of the maximum nonextended term, is unreasonably severe in view of his expression of remorse at the sentencing hearing and the importance of encouraging defendant's rehabilitation.

We shall not disturb a sentence within the statutory range unless the trial court abused its discretion. People v. Stacey, 193 Ill. 2d 203, 209-10 (2000). We may not substitute our judgment

-11-

for the trial court's merely because we may have weighed the pertinent sentencing factors differently. People v. Rathbone, 345 Ill. App. 3d 305, 313 (2003). If mitigating evidence was before the trial court, we presume that the court considered it. People v. Bruce, 299 Ill. App. 3d 61, 68 (1998). Given these standards, we cannot say that the trial court abused its sentencing discretion.

As defendant notes, he was eligible for as much as 10 years' imprisonment. Although defendant expressed remorse in allocution, the trial court could consider that he had committed numerous drug-related offenses, including several felonies of which he was convicted and one uncharged possession offense committed while he was out on bond in this case. The trial court quite reasonably concluded that defendant's history showed that he was not a good candidate for probation, as he had not taken advantage of previous opportunities to rehabilitate himself. Given these considerations, defendant's sentence must stand.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

BYRNE and GILLERAN JOHNSON, JJ., concur.